[No. 16192-7-III.   Division Three.   December 23, 1997.]

JAMES HOLLMANN, *Appellant*, v. JAMES CORCORAN, ET AL., *Respondents*.

*Jennifer R. Willner* and *Debra L. Stephens*, for appellant.

*James M. Danielson* of *Jeffers, Danielson, Sonn & Aylward, P.S.*, for respondents.

KURTZ, J. — James Hollmann contends in dismissing his case against James Corcoran as a matter of law, the court erred in (1) interpreting RCW 4.16.340(1)(c) to contain a constructive discovery/due diligence requirement; (2) applying this constructive discovery standard without regard to the particular circumstances of Mr. Hollmann relating to his emotional and psychological injuries that impeded his discovery; and (3) concluding Mr. Hollmann should have discovered his claim against Mr. Corcoran more than three years prior to the date he commenced his suit. We decide

RCW 4.16.340(1)(c) refers to the discovery of the causal connection between a known act and subsequent injuries, including injuries that develop years later. For that reason, the statute of limitations is tolled until the victim of childhood sexual abuse in fact discovers the causal connection between the defendant's acts and the injuries for which the claim is brought. The judgment of the trial court is reversed.

## FACTS

James Hollmann first met James Corcoran in the fall of 1976 in Wenatchee, Washington. Mr. Hollmann was age 12; Mr. Corcoran was an adult. Mr. Hollmann was a troubled child from a dysfunctional family. At the age of six, Mr. Hollmann had once been sexually molested by his stepfather's brothers. He began smoking and using alcohol at an early age, around 6 or 7, and was using harder drugs by the age of 11. At various times, he was out of his home, on the streets or in foster care. When he met Mr. Corcoran, he was a runaway.

Mr. Corcoran first befriended Mr. Hollmann at a youth arcade in Wenatchee. He supplied Mr. Hollmann with alcohol and marijuana and, at the end of the evening, gave him a ride home. Eventually, Mr. Hollmann was hired by Mr. Corcoran to help run a dance at a local high school and their relationship began. Mr. Corcoran would pick up Mr. Hollmann at his house once or twice a week, and they would drink and socialize. Their "friendship" was characterized by Mr. Corcoran offering alcohol or drugs, as well as compliments and gifts to Mr. Hollmann. Mr. Hollmann looked to Mr. Corcoran as a good friend or older brother.

From an early point in their relationship, Mr. Corcoran had Mr. Hollmann pose for pictures for him. He would dress him in certain clothes, photograph him in various poses and eventually, began asking him to strike more provocative poses. For example, he was asked to take off his shirt, or unbuckle his jeans and open the top button. He also had

Mr. Hollmann do work for him, pulling weeds, cleaning up around the place where he worked, or helping with dances. Mr. Corcoran gave him cash, although Mr. Hollmann was unsure whether the money was for the odd jobs or for posing for the pictures.

Mr. Hollmann was 13 when Mr. Corcoran committed the first overt sexual act upon him. Mr. Corcoran took Mr. Hollmann with him to set up a dance in Easton, Washington, which required an overnight stay in Cle Elum, Washington. After the dance, they drank and smoked marijuana. Their motel room had only one bed, which Mr. Corcoran and Mr. Hollmann shared. Mr. Hollmann, intoxicated from the alcohol and marijuana, went to bed wearing only his underwear. Mr. Corcoran, also in his underwear, climbed on top of Mr. Hollmann and rubbed against him until Mr. Corcoran ejaculated. The next day, Mr. Corcoran said nothing of the incident, and paid Mr. Hollmann for the dance. Mr. Hollmann "didn't feel good" about the incident, but did not tell anyone, because he had not tried to stop Mr. Corcoran and still regarded him as his "closest friend."

After the Cle Elum incident, Mr. Hollmann did not see Mr. Corcoran for a couple of months. Eventually, Mr. Hollmann began doing yard work for Mr. Corcoran at his new home, and also began staying overnight. During one period of 1977, Mr. Hollmann stayed at Mr. Corcoran's house because he was having trouble at home. On the second or third night, after sharing alcohol and marijuana with Mr. Hollmann, Mr. Corcoran insisted they sleep in the same bed. During the night, he climbed on top of Mr. Hollmann and again rubbed against him until he ejaculated.

Following this episode, Mr. Corcoran's sexual abuse of Mr. Hollmann became more frequent and severe. Sexual contact occurred at Mr. Corcoran's home, in the radio station van, at a baseball field in Ephrata, and even at the group home where Mr. Hollmann resided as a juvenile delinquent when he was 14 and 15. Ultimately, the sexual contact progressed into intercourse, when Mr. Hollmann was around 15 or 16. Frequently, sexual contact would be

followed by Mr. Corcoran giving Mr. Hollmann cash. Mr. Hollmann came to understand that, when Mr. Corcoran asked him if he wanted to "make extra money," it meant he intended to have sexual contact. Mr. Corcoran also continued to give Mr. Hollmann gifts; he would take him shopping for clothes and shoes, and even bought him a car. He took him on weekend trips to Seattle, where they would stay in a hotel, visit friends, and frequent gay bars. Mr. Hollmann believed Mr. Corcoran was a good friend whom he could trust; he viewed the sexual relationship as something he "owed" Mr. Corcoran, and as something that did not hurt him.

Mr. Hollmann's drug abuse intensified during his late teens and caused significant problems in his work and personal relationships. Mr. Hollmann entered a relationship with his present wife, Kim, and the couple had a child together in August 1986. Mr. Hollmann felt extreme guilt and shame in the presence of his son, in part because of his sexual relationship with Mr. Corcoran. Nonetheless, he continued the relationship, even to the extent of going with Mr. Corcoran to Seattle on weekends. The last sexual encounter between Mr. Hollmann and Mr. Corcoran occurred in 1987.

Around February 1989, Mr. Hollmann entered Alcoholics Anonymous and stopped drinking and using drugs. Feelings of extreme depression and self-hatred resurfaced upon the birth of Mr. Hollmann's second child in 1989. During an episode when he was feeling a need to harm himself and was concerned about his ability to stay sober, Mr. Hollmann sought crisis counseling at the Chelan-Douglas County Mental Health Center. On July 21, 1989, he met with counselor Linda Battello, who assessed him as "anxious, suicidal, feeling out of control, and afraid that he was going to be very angry."[1]

After five initial counseling sessions, Ms. Battello

---

[1] At trial, the court struck Linda Battello's live testimony due to a discovery violation, and directed the jury to consider only her deposition testimony. In ruling on Mr. Corcoran's motion for judgment as a matter of law, however, the court

performed an intake evaluation, which involved taking a personal history from Mr. Hollmann. Mr. Hollmann related, among other things, that he had had sexual contact with an adult male that made him feel extremely guilty. Ms. Battello did not ask Mr. Hollmann to describe or discuss this contact, noting: "I do not necessarily explore exactly what those [past incidents] are, but I take their word that those occurred. And in this case that was the extent of it." Ms. Battello diagnosed Mr. Hollmann as suffering from posttraumatic stress disorder (PTSD), delayed onset; major depression, single episode; and severe polysubstance abuse in full remission.

Ms. Battello counseled Mr. Hollmann during approximately 20 sessions. The major theme explored in the counseling included his perception of himself, his relationship with his wife, his need to remain sober and his ability to be a good parent. Ms. Battello was also concerned with defusing Mr. Hollmann's suicidal ideations and battling his depression. While Mr. Hollmann disclosed more information about the nature of the "inappropriate sexual contact" he initially identified, the counseling did not explore the causal relationship between Mr. Hollmann's emotional and psychological injuries and Mr. Corcoran's sexual abuse. Ms. Battello explained generally the bases for her diagnosis of PTSD, but her focus was on developing a treatment plan, not helping Mr. Hollmann understand the causes of his condition.

Moreover, Ms. Battello testified Mr. Hollmann was not capable of understanding the connection between his PTSD and Mr. Corcoran's abuse at the time she counseled him. Ms. Battello found it particularly significant that Mr. Hollmann was newly sober at the time she saw him, and thus his brain chemistry was still affected by years of substance abuse. She also noted that his depression contributed to his inability to gain any insight into the causes of his condition. It is common, she testified, for newly sober patients

considered Ms. Battello's trial testimony, which is properly before this court on appeal.

suffering from depression and PTSD to be unable to see the causal connection between their condition and past events.

During the time he was counseling with Ms. Battello, Mr. Hollmann continued to regard Mr. Corcoran as his friend, and he did not see their relationship as one of perpetrator and victim. He thought he was a "volunteer" in the relationship. He invited Mr. Corcoran to his wedding in 1990. In 1992, as part of his Alcoholics Anonymous recovery program, Mr. Hollmann apologized to Mr. Corcoran for things he had done to him. Mr. Corcoran accepted the apology, and gave Mr. Hollmann a hug.

In 1993, following a back injury, Mr. Hollmann was referred by the Department of Labor and Industries to Dr. Glen Frese for a psychological evaluation. This was the first time Mr. Hollmann had seen a therapist since his sessions with Linda Battello. The initial purpose of Dr. Frese's evaluation was to determine the psychological components of Mr. Hollmann's back injury in relation to his vocational recovery. As the counseling sessions progressed, however, Dr. Frese began to explore issues in Mr. Hollmann's past, including his relationship with Mr. Corcoran.

Mr. Hollmann described his relationship with Mr. Corcoran as voluntary; he felt intense shame and guilt due to his perception that he was a willing participant in a homosexual relationship. He blamed himself, not Mr. Corcoran, and believed he was a bad person because of what he, not Mr. Corcoran, had done. Dr. Frese thought, with the help of therapy, Mr. Hollmann was beginning to understand his role as a victim rather than a volunteer, and he began to see Mr. Corcoran as the person responsible for his emotional and psychological injuries.

Dr. Frese did not diagnose Mr. Hollmann as suffering from PTSD until some time in 1994. His earlier diagnoses focused on Mr. Hollmann's vocational rehabilitation and issues of self-image and depression. Mr. Hollmann's condition as a sufferer of PTSD affected the progress of therapy, by impeding his ability to understand and cope with the emotional trauma he was experiencing.

*Procedural Facts.* Mr. Hollmann brought suit against Mr. Corcoran in Chelan County Superior Court on May 2, 1995. Mr. Corcoran sought dismissal on statute of limitations grounds in a summary judgment motion. The trial court denied the motion, concluding "there are unresolved issues of material fact with regard to the application of the statute of limitations in this case under either RCW 4.16.340 (b) **or** (c), both of which appear to be applicable (whichever is later)."

The matter proceeded to trial. At the close of the evidence, Mr. Corcoran sought a directed verdict based on the statute of limitations. The court denied the motion, but modified its summary judgment ruling to the extent it allowed Mr. Hollmann the benefit of the later of the periods in RCW 4.16.340. The court held Mr. Corcoran would be entitled to rely on either of the limitations periods, RCW 4.16.340(1)(b) or (c), and so instructed the jury, based on an instruction used in *Keene v. Edie.*[2]

The case was submitted to the jury, which deliberated but could not reach the necessary consensus on the question of Mr. Corcoran's liability, the first question on the special verdict form. Because the jury hung on this issue, it never reached the issue of Mr. Corcoran's statute of limitations defense. Pursuant to RCW 4.44.340, the hung jury resulted in a mistrial.

Following the mistrial, Mr. Corcoran brought a motion for judgment as a matter of law again based on the statute of limitations. The court granted Mr. Corcoran's motion, and dismissed Mr. Hollmann's claims with prejudice.

Mr. Hollmann now appeals.

## ANALYSIS

Mr. Hollmann contends the trial court erred in granting

---

[2]The trial court erroneously believed *Keene* was a published decision, and thus binding on its interpretation of RCW 4.16.340(1)(b) and (c). In fact, the case is unpublished, as the court subsequently acknowledged: *Keene v. Edie*, No. 33105-1-I (Wash. Ct. App. May 1, 1995), *review denied*, 129 Wn.2d 1012 (1996).

judgment as a matter of law. RCW 4.16.340(1) provides a special statute of limitations for childhood sexual abuse cases. He submits RCW 4.16.340(1)(c) creates an actual discovery standard, meaning a plaintiff may bring a claim based on childhood sexual abuse allegations within three years of the date he or she discovers that the act caused the injuries. According to Mr. Hollmann, the court superimposed a constructive discovery element on RCW 4.16.340(1)(c). The trial court held that, without a constructive discovery element, RCW 4.16.340(1)(c) would subsume (1)(b); in effect, it redrafted (1)(c) to include a "should have discovered" requirement.

Moreover, even if the trial court were correct in applying the constructive discovery element, Mr. Hollmann contends the trial court misapplied it. In holding that a reasonable person in Mr. Hollmann's circumstances would have discovered his claim against Mr. Corcoran no later than 1990, the court failed to consider that Mr. Hollmann's "circumstances" must include the perspective of a reasonable victim of childhood sexual abuse. Mr. Hollmann submits a "reasonable person" in his circumstances is a reasonable victim of childhood sexual abuse whose emotional and psychological injuries impede discovery of a cause of action based on such abuse.

■ A motion for judgment is governed by CR 50(b) which provides in part:

> Not later than 10 days after the entry of judgment or after the jury is discharged if no verdict is returned . . . a party may move for judgment as a matter of law . . . . If no verdict was returned, the court may, in disposing of the motion, direct the entry of judgment as a matter of law or may order a new trial.

This court reviews de novo the trial court's decision to enter judgment as a matter of law, viewing conflicting evidence in the light most favorable to the nonmovant, and determines whether the proffered result is the only reasonable conclusion. *Forro Precision, Inc. v. International Bus.*

*Mach. Corp.*, 673 F.2d 1045, 1058 (9th Cir. 1982) (reviewing the court's entry of judgment as a matter of law under FED. R. CIV. P. 50(b)[3]).

▮▮▮ The analysis begins with an examination of RCW 4.16.340, the statute of limitations relating to childhood sexual abuse. The effect of RCW 4.16.340 is a question of statutory construction. This court reviews de novo questions of statutory construction. *Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993). The objective is to determine the intent of the Legislature by examining the language of the statute. *Stone v. Chelan County Sheriff's Dept.*, 110 Wn.2d 806, 809, 756 P.2d 736 (1988). Words are given their plain meaning unless a contrary intent appears. *In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986). All provisions of an act are considered in relation to each other and, if possible, harmonized to ensure proper construction for each provision. *Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982). Statutes should not be construed as to render any portion meaningless or superfluous. *Stone*, 110 Wn.2d at 810.

RCW 4.16.340 governs the statute of limitations for actions based on childhood sexual abuse and provides in pertinent part:

(1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:

(a) Within three years of the act alleged to have caused the injury or condition;

(b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or

(c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:

---

[3]*Forro*, 673 F.2d at 1058, applied FED. R. CIV. P. 50(b), which provided: " '[i]f no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.' "

PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.

The Legislature specifically stated its intent in its findings:

(1) Childhood sexual abuse is a pervasive problem that affects the safety and well-being of many of our citizens.

(2) Childhood sexual abuse is a traumatic experience for the victim causing long-lasting damage.

(3) The victim of childhood sexual abuse may repress the memory of the abuse or be unable to connect the abuse to any injury until after the statute of limitations has run.

(4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.

(5) Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later.

(6) The legislature enacted RCW 4.16.340 to clarify the application of the discovery rule to childhood sexual abuse cases. At that time the legislature intended to reverse the Washington supreme court decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986).

It is still the legislature's intention that *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986) be reversed, as well as the line of cases that state that discovery of any injury whatsoever caused by an act of childhood sexual abuse commences the statute of limitations. The legislature intends that the earlier discovery of less serious injuries should not affect the statute of limitations for injuries that are discovered later.

LAWS OF 1991, ch. 212, § 1. Here, Mr. Hollmann does not claim he suffered from repressed memories. He was aware at all times of the acts between him and Mr. Corcoran. However, Mr. Hollmann claims he did not recognize the causal relationship between his present problems and Mr. Corcoran's acts.

RCW 4.16.340(1)(c) addresses the claims of the victims of abuse who fail to make the connection between the abuse and the injuries experienced years later. This is confirmed by legislative findings (4) and (5). This court considered the nearly identical issue under the medical negligence statute of limitations, and found the limitations period was tolled until the plaintiff had actual knowledge the injury or condition was caused by a wrongful act. *Bixler v. Bowman*, 94 Wn.2d 146, 149, 614 P.2d 1290 (1980); *Teeter v. Lawson*, 25 Wn. App. 560, 562-64, 610 P.2d 925 (1980).

■■ The trial court reasoned that if RCW 4.16.340(1)(c) applied to every case involving childhood sexual abuse, (1)(b) would be rendered meaningless because the statute of limitations date would always be controlled by the claimant and the date he or she claims to have discovered the injury. This reasoning fails to appreciate the difference between the two sections. Section (1)(b) addresses repressed memory claims where the victim discovers his or her injury or condition was caused by a previously undiscovered act. In view of the subjective nature of repressed memory claims, it is understandable that a constructive discovery element might be imposed for such cases. Section (1)(c), on the other hand, refers to the discovery of the causal connection between a known act and subsequent injuries including injuries that develop years later.

The statute of limitations is tolled until the victim of childhood sexual abuse in fact discovers the causal connection between the defendant's act and the injuries for which the claim is brought. In this case, a jury could find Mr. Hollmann did not discover the connection between his sexual abuse and his injuries until he began treatment with Dr. Frese in 1993. While Ms. Battello made an initial diagnosis of PTSD as early as 1989, a jury could find Mr. Hollmann did not relate this diagnosis to Mr. Corcoran's abuse.

The judgment of the trial court is reversed.

SWEENEY, C.J., and KATO, J., concur.