[No. 28107-8-III.   Division Three.   August 3, 2010.]

JONATHAN M. CAROLLO, *Appellant*, v. PAUL E. DAHL ET AL., *Respondents*.

*Kirk D. Miller*, for appellant.

*Andrew C. Bohrnsen* (of *The Law Office of Andrew C. Bohrnsen PS*) (*Eugene J. Egan, William L. Bowen*, and *Kevin H. Louth* of *Manning, Marder, Kass, Elrod, Ramirez LLP*, of counsel), for respondent Dahl.

*Robert F. Sestero II* (of *Evans, Craven & Lackie PS*), for respondents Payne, Mewhinney, Edward J. Underhill, and Fourth Memorial Church.

*John P. Bowman* (of *Keefe Bowman Bruya PS*), for respondents Ramey, John Underhill, and Valley Fourth Memorial Church.

[As amended by order of the Court of Appeals October 7, 2010.]

¶1 KORSMO, J. — Jonathan Carollo appeals the summary judgment dismissal of his claim for damages caused by childhood sexual abuse. He argues the trial court incorrectly applied the applicable statute of limitations. We disagree and affirm.

## FACTS

¶2 In 1985, Jonathan Carollo was a 16-year-old student at Northwest Christian School in Spokane. Mr. Carollo first met Paul Dahl while attending a bible camp that summer. During the camp, Mr. Dahl invited Mr. Carollo to his apartment. Once there, Dahl and Carollo engaged in casual wrestling, which evolved into Dahl touching Carollo and rubbing his body up against Carollo. Dahl put his hands under Carollo's jeans. Dahl insisted that they pray about Carollo's homosexuality. These encounters continued for the next several years, including for approximately one year after Mr. Carollo's 18th birthday. None of the encounters between Dahl and Carollo involved sexual intercourse.

¶3 From 1988-1993, Mr. Carollo worked as an intern at the church that ran the bible camp. He first told the church about his relationship with Dahl in the summer of 1988. Around the same time, Carollo sought counseling for emotional difficulties. He was told that Dahl's molestation was likely the source of his psychological difficulties. Mr. Carollo went to college and eventually became a counselor of children, many of whom had sexual abuse in their past.

¶4 Mr. Carollo continued to seek counseling. In 1995, after two years of counseling with a different therapist, Carollo was diagnosed with various posttraumatic stress

disorder (PTSD) symptoms, including depression, flashbacks, and nightmares. These were diagnosed as related to Dahl's molestation of Carollo.

¶5 In the spring of 2008, Mr. Carollo's PTSD became much worse. He began experiencing regular nightmares, memory loss, dissociative periods, and became unable to accomplish even minor tasks. Carollo was diagnosed with panic disorder, major anxiety, major depressive disorder, and agoraphobia. He left his employment as a counselor as a result of being unable to function. Carollo's counselor stated that these new diagnoses were related to the sexual abuse. She also stated that while PTSD symptoms can wax and wane over time, it is not common or expected that new symptoms will occur or to see increases in symptoms like those exhibited by Mr. Carollo.

¶6 Mr. Carollo filed suit against Mr. Dahl and others on July 3, 2008. He amended the complaint on October 27, 2008. The defendants moved for summary judgment in March 2009 based on the statute of limitations. The trial court granted the motion. This appeal followed.

## ANALYSIS

¶7 This court reviews summary judgments *de novo.* *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." CR 56(c). "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe R.R.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). "Questions of fact may be determined as a matter of law 'when reasonable minds could reach but one conclusion.' " *Id.* at 788 (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)). When considering a summary judgment motion, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

¶8 This court interprets statutes by examining the language of the statute to determine the intent of the Legislature. *Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 809-810, 756 P.2d 736 (1988). Words are given their plain meaning unless a contrary intent appears in the statute. *In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986). Statutes should not be construed to render any portion meaningless or superfluous. *Stone*, 110 Wn.2d at 810.

¶9 RCW 4.16.340 governs the statute of limitations in child sexual abuse cases. It provides in pertinent part:

(1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:

(a) Within three years of the act alleged to have caused the injury or condition;

(b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or

(c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought.

¶10 The Legislature issued the following findings of intent in its 1991 revision of this statute:

(1) Childhood sexual abuse is a pervasive problem that affects the safety and well-being of many of our citizens.

(2) Childhood sexual abuse is a traumatic experience for the victim causing long-lasting damage.

(3) The victim of childhood sexual abuse may repress the memory of the abuse or be unable to connect the abuse to any injury until after the statute of limitations has run.

(4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.

(5) Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later.

(6) The legislature enacted RCW 4.16.340 to clarify the application of the discovery rule to childhood sexual abuse cases. At that time the legislature intended to reverse the Washington supreme court decision in *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986).

It is still the legislature's intention that *Tyson v. Tyson*, 107 Wn.2d 72, 727 P.2d 226 (1986) be reversed, as well as the line of cases that state that discovery of any injury whatsoever caused by an act of childhood sexual abuse commences the statute of limitations. The legislature intends that the earlier discovery of less serious injuries should not affect the statute of limitations for injuries that are discovered later.

LAWS OF 1991, ch. 212, § 1.

■■ ¶11 Appellate courts have found actions in compliance with the three year limitation of RCW 4.16.340(1)(c) in two sets of circumstances: (1) where there has been evidence that the harm being sued upon is qualitatively different from other harms connected to the abuse that the plaintiff had experienced previously or (2) where the plaintiff had not previously connected the recent harm to the abuse.

¶12 In *Korst v. McMahon*, 136 Wn. App. 202, 148 P.3d 1081 (2006), a woman sued her parents for harms caused by her father's rape of her when she was 13. The trial court ruled the action time barred because the woman had written a letter to her father several years before bringing suit in which she complained about the rape and stated that the abuse was " 'something that <u>never</u> goes away' " and that it had " 'haunted' " her for over 20 years. *Id.* at 209. The Court of Appeals reversed. It noted that the letter did not mention any of the specific physical and emotional harms that the woman complained of in her suit. It also noted that she had supplied evidence that these harms were connected to the rape, and she was only recently aware of this connection. *Id.* at 211.

¶13 In *Hollmann v. Corcoran*, 89 Wn. App. 323, 949 P.2d 386 (1997), Mr. Hollmann sued a childhood abuser. Hollmann was later diagnosed with PTSD twice by different

counselors. Both diagnoses connected the PTSD with the abuse, but the first therapist did not assist Mr. Hollmann in exploring the causes of the abuse; rather, she focused on treatment. The first therapist testified that, at the time of diagnosis, Mr. Hollmann was not capable of connecting the abuse to his symptoms. This was because he felt he had volunteered for the relationship with the abuser. The first diagnosis happened more than three years prior to Hollmann bringing suit. The trial court granted the defendant's summary judgment motion because the plaintiff should have made the connection between the abuse and his emotional problems based on the first diagnosis. This court reversed, holding that the statute does not impose a reasonability requirement on discovery; rather, it is an actual discovery requirement. *Id.* at 334. The court held that it was a question for the jury as to whether Hollmann related the initial diagnosis to the childhood abuse. *Id.*

¶14 In the present case, unlike the plaintiff in *Hollmann*, there is no allegation that Mr. Carollo did not connect his emotional harms to the abuse until recently. Rather, Carollo is claiming that the severity of his most recent symptoms should entitle him to the more lenient provisions of the discovery of harm provision in the statute. If Mr. Carollo's problems were qualitatively different than they had been in the past, then the *Korst* rule would apply. Carollo does state he is exhibiting some new symptoms, such as memory loss. He also claims an inability to control his other symptoms as he had done in the past. But Carollo and his therapist characterize these as more severe manifestations of Carollo's underlying PTSD, which they connect to the abuse. Thus, it is a quantitative difference in symptoms of which Carollo complains. He argues that because this was unanticipated, it invokes the discovered harm portion of the statute. But the statute says nothing about quantity of harm, it speaks of "injury" and connection of "injury" to "acts." The injury here is the psychological problems associated with PTSD. Mr. Carollo admits he was aware of these problems and connected them to Mr. Dahl's acts as early as 1988. Yet, Mr. Carollo waited for 20 years to file suit.

¶15 While Mr. Carollo is correct that the Legislature sought to liberalize the statute of limitations in favor of victims of childhood abuse, it did impose limits. Adopting his interpretation of the statute would be a substantial expansion, if not an outright repeal, of those limits. The proper body to make such changes is the Legislature. Although legislative finding number five, concerning later discovery of harm, might be read to support the contention that new symptoms related to a prior PTSD diagnosis result in a new cause of action, a more reasonable reading of the finding is that the Legislature sought to give causes of action for *different* injuries discovered at different times rather than applying to more severe manifestations of a prior injury. In any event, legislative findings are not operative law and cannot be used in jury instructions. *In re Det. of R.W.*, 98 Wn. App. 140, 145, 988 P.2d 1034 (1999). A jury faced with the question of whether, prior to 2005, Carollo connected his psychological difficulties with the abuse by Dahl could reach only one conclusion: he did. Thus, summary judgment was appropriately granted.

¶16 We affirm the trial court.

KULIK, C.J., and SIDDOWAY, J., concur.