FILED
COURT OF APPEALS
DIVISION II

2015 MAR 10 AM 8:34

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| B.R.,[†] | No. 44874-2-II |
| Appellant, | |
| v. | |
| SUZANNE HORSLEY, FREDERICK HORSLEY, KEITH TIMMER, and CHURCH OF THE LIVING WAY, | PUBLISHED OPINION |
| Respondents. | |

JOHANSON, C.J. — The issue in this appeal is the application of the statute of limitations to a claim of childhood sexual abuse. B.R. appeals from the trial court's grant of summary judgment in favor of Suzanne and Frederick Horsley, Keith Timmer, and the Church of the Living Way (Horsley) finding that her claim for damages against Horsley for childhood sexual abuse was time barred under RCW 4.16.340(1).[1] Although B.R. had counseling for the sexual abuse when she was a teenager, the record demonstrates a genuine factual dispute regarding when she

---

[†] We refer to the appellant by her initials in order to protect her privacy.

[1] We refer to the defendants collectively as "Horsley" except where necessary to name each individually.

discovered the extent and cause of her claimed injuries. Accordingly, we reverse the order dismissing her claims and remand for trial.

## FACTS

Between June 2002 and late 2004, B.R. was sexually abused by Suzanne Horsley, an adult youth group leader at the Church of the Living Way. B.R. was 13 years old when the abuse began, and she turned 18 in September 2006. Suzanne Horsley pleaded guilty to several counts of child molestation.

Kelly Peck, a mental health therapist, treated B.R. while she was still a minor from October 2005 until July 2006 for symptoms related to her abuse including "stress, anxiety, depression, anger, feelings of betrayal, guilt, worry, [and] problems with memory." Clerk's Papers (CP) at 103. During the time Peck treated B.R., B.R. was not married, was not sexually active, and had never been employed. In July 2006, a few months before her 18th birthday, B.R. discontinued her treatment with Peck.

In 2008, B.R. married a man who had been her first boyfriend. Over the next several years, B.R. and her husband struggled in their marriage. B.R. experienced sexual dysfunction and a lack of intimacy, and she and her husband argued about whether to have children. Her symptoms, including flashbacks, guilt, and other emotional problems, were worse than she had ever experienced, and the marital problems continued until their divorce in 2011. B.R. was also confused about her sexuality. She engaged in a sexual relationship with a woman that also caused significant confusion in her life.

B.R. also experienced problems at work. These problems began in 2009, when she became a high school volleyball coach and attempted to become a firefighter. B.R. also struggled to reconnect with her religion, but the church was no longer a comforting influence in her life.

By November 2011, B.R. was in therapy with Mary Dietzen, Ph.D., in Spokane. It was then that B.R. realized the serious effect of the abuse on her adult relationships, sexuality, work, and spirituality. Dr. Dietzen helped B.R. to understand how Horsley's sexual abuse triggered symptoms based on the different, new life events that B.R. was experiencing.

On January 3, 2012, after several months of treatment with Dr. Dietzen, B.R. sued Horsley. Horsley moved for summary judgment, arguing that the statute of limitations barred B.R.'s suit. In opposition to Horsley's motion, B.R. presented portions of Dr. Dietzen's deposition, during which the following exchange, relevant to the statute of limitations, occurred:

> Q. Did you ask her how long she had felt this way, that the abuse by Horsley had taken from her certain things that she felt were important, such as intimacy, sexuality, and those kinds of things?
> A. I got the impression that it's been in the last, you know, two -- two-plus years, because she's holder [sic] now, she's -- she takes classes, she's out in the world, she's away from that environment, she's in a relationship -- got in this relationship with Jody.
> So more of it has come to her -- you know, to the forefront in the last year or two, I would say, she's developed a lot more of an understanding of kind of the impact.

CP at 159-60. The trial court granted Horsley's motion for summary judgment, concluding that B.R.'s suit was time barred by the three-year statute of limitations.[2] B.R. appeals that order.

---

[2] RCW 4.16.340(1).

## ANALYSIS

The issue here is whether reasonable persons could *only* conclude that B.R. realized that her injuries were connected to the childhood sexual abuse more than three years before she filed suit. We hold that there are genuine issues of material fact that preclude summary judgment regarding when B.R. connected her injuries to the childhood sexual abuse.

### I. STANDARD OF REVIEW

We review a summary judgment order de novo. *Camicia v. Howard S. Wright Constr. Co.*, 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Summary judgment based on the statute of limitations is appropriate only where the pleadings, depositions, interrogatories, admissions, and affidavits in the record establish that no genuine issue of material fact exists regarding when the statutory period began. *Young Soo Kim v. Choong-Hyun Lee*, 174 Wn. App. 319, 323, 300 P.3d 431 (2013); CR 56(c). Therefore, the trial court could only grant summary judgment finding that the statute of limitations barred B.R.'s claims as a matter of law if no genuine issue of fact exists as to when B.R. realized the cause and extent of her injuries. *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995). The statute of limitations is an affirmative defense and the defendant bears the burden of proof. *Korst v. McMahon*, 136 Wn. App. 202, 208, 148 P.3d 1081 (2006). We perform the same inquiry as the trial court, review the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

## II. THE CHILDHOOD SEXUAL ABUSE STATUTE OF LIMITATIONS

The parties agree that RCW 4.16.340(1)(c) is the controlling provision. The statute states, in relevant part,

> All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>
> . . . .
>
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought:
> PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.

RCW 4.16.340(1).

The legislature's intent in enacting this statute of limitations was to provide

> a broad and generous application of the discovery rule to civil actions for injuries caused by childhood sexual abuse. . . . [I]ts primary concern was to provide a broad avenue of redress for victims of childhood sexual abuse who too often were left without a remedy under previous statutes of limitation.

*C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 712, 985 P.2d 262 (1999).

"[T]his special statute of limitations is unique in that it does not begin running when the victim discovers an injury. Instead, it specifically focuses on when a victim of sexual abuse discovers the causal link between the abuse and the injury for which the suit is brought." *Korst*, 136 Wn. App. at 208 (citing RCW 4.16.340(1)(c)). This is because "[t]he legislature specifically anticipated that victims may know they are suffering emotional harm or damage but not be able to understand the connection between those symptoms and the abuse." *Korst*, 136 Wn. App. at 208.

Application of the statute of limitations allowed the plaintiffs in *Korst* to go forward, while it precluded the plaintiff's claims in *Carollo v. Dahl*, 157 Wn. App. 796, 803, 240 P.3d 1172 (2010). B.R. contends that in *Carollo*, Division Three of this court misapplied *Korst*'s holding,

while Horsley contends that B.R.'s claims are even more clearly barred by the statute of limitations than Carollo's claims.

In *Korst*, the plaintiff sued her parents for damages caused by her father's sexual abuse. 136 Wn. App. at 204-05. The abuse started when she was 8 years old and continued until she was 14. *Korst*, 136 Wn. App. at 204. In 1995, Korst wrote her father a letter acknowledging his mistreatment of her. *Korst*, 136 Wn. App. at 204. Seven years later, in 2002, Korst entered counseling for problems that she was having with her son. *Korst*, 136 Wn. App. at 204. During those sessions, she learned that her father's abuse was the likely cause of those problems. *Korst*, 136 Wn. App. at 204-05. Korst sued her parents, and the trial court granted a directed verdict in her parents' favor reasoning that the 1995 letter showed that she had connected the abuse with her injuries at the time that she wrote it. *Korst*, 136 Wn. App. at 205. We reversed, concluding that although the letter showed that Korst resented her father for sexually abusing her, it did not show that Korst understood the effects of his abuse. *Korst*, 136 Wn. App. at 209.

In *Carollo*, the plaintiff was molested as a teenager by a camp counselor. 157 Wn. App. at 798. He sought counseling for emotional difficulties in 1988 and was told at that time that the abuse was the likely source of these difficulties. *Carollo*, 157 Wn. App. at 798. In 1995, he "was diagnosed with various posttraumatic stress disorder (PTSD) symptoms" such as depression, flashbacks, and nightmares. *Carollo*, 157 Wn. App. at 798-99. In 2008, Carollo filed suit after his symptoms became much worse and he was unable to function at this job. *Carollo*, 157 Wn. App. at 799. His new symptoms included panic disorder, major anxiety, major depressive disorder, and agoraphobia. *Carollo*, 157 Wn. App. at 799. Carollo left his job and entered therapy where

6

his counselor related the new symptoms to the childhood sexual abuse. *Carollo*, 157 Wn. App. at 799.

The trial court dismissed the suit as time barred. *Carollo*, 157 Wn. App. at 802. Division Three affirmed, holding that, unlike in *Korst*, the plaintiff could not claim that he had only recently connected his emotional harm to childhood sex abuse. *Carollo*, 157 Wn. App. at 802-03. "Rather, Carollo is claiming that the severity of his most recent symptoms should entitle him to the more lenient provisions of the discovery of harm provision in the statue." *Carollo*, 157 Wn. App. at 802.

This case is more like *Korst* than *Carollo*. Like Korst, B.R. did not understand the full effect of the childhood sexual abuse until she entered counseling as an adult. Although B.R. had dealt with serious symptoms of her abuse for many years, she presented evidence that, until recently, she was not aware that her new, adult difficulties with her marriage, her work, and connecting with religion were caused by the childhood abuse.

III. GENUINE ISSUES OF MATERIAL FACT

In light of the statute of limitations and the case law interpreting it, we review the record de novo and determine whether the trial court erred when it found that, based on the record, no genuine dispute of material fact exists as to when B.R. realized the cause and extent of the injuries she alleges. There are three sources of evidence that support B.R.'s claim that within the three-year statute of limitations she discovered new or more serious injuries that were caused by the abuse: B.R.'s declaration, and Dr. Dietzen's and Peck's deposition testimony. We recount below some of the evidence presented by both parties that demonstrates the existence of a genuine dispute of material fact regarding when B.R. connected the sexual abuse to her claimed injuries.

7

B.R. declared that (1) her injuries began in 2008 with the problems that she experienced throughout her marriage until it ended in 2011, (2) she suffered additional injury in 2009 due to her problems at work as a volleyball coach and in training to be a firefighter, and (3) the final new or more serious injury that she alleged occurred in 2010 when she attempted to reconnect with and seek comfort in her religion. B.R. further declared that after she began therapy with Dr. Dietzen in 2011, she began "to realize how seriously affected" she was by the abuse "in relationships, sexuality, work[,] and spirituality" and established the causal connection. CP at 178.

A. PROBLEMS WITH INTIMACY AND IN HER MARRIAGE

Because she was not sexually active in 2006 when she was a young teen prior to meeting and marrying her husband, B.R.'s sexual dysfunction and problems with intimacy are new injuries that occurred at the earliest when she was married in 2008 and continued until her divorce in 2011. B.R.'s intimate relationship with her husband caused "worse flashbacks and emotions than [she] had ever had before" and this was, at least, a more serious injury. CP at 176. Her sexual confusion was further complicated by her intimate relationship with a woman. B.R.'s fear about having children is also a new injury because she had never considered starting a family before her marriage.

B.R.'s declaration explaining the genesis of her problems with sexual dysfunction and Dr. Dietzen's deposition testimony where she stated that she thought B.R. had not experienced these problems before the last "two-plus years," demonstrate that a triable question exists regarding whether she experienced a new injury relating to intimate relationships during the three-year statute of limitations. CP at 159. Peck's deposition testimony also lends support to this conclusion

8

because she testified that during the time that she treated B.R., B.R. was not married or romantically involved with anyone and did not have any children.

These injuries are precisely the type of injuries for which the legislature intended to provide a remedy when it considered the 1991 amendment to RCW 4.16.340. In enacting the 1991 amendment to the statute of limitations for actions based on childhood sexual abuse, the legislature recognized that these are the types of injuries that a victim may not fully understand until later in life: "Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later." LAWS OF 1991, ch. 212, § 1(5). In fact, when considering the 1991 amendment, the House Judiciary Committee specifically identified marital problems and sexual dysfunction as examples of more serious injuries that victims of childhood sexual abuse will, necessarily, not experience or understand until later in life. HOUSE COMM. ON JUDICIARY, H.B. REP. ON ENGROSSED SUBSTITUTE HB 2058, 52d LEG., REG. SESS. (Wash. 1991).

Horsley points to B.R.'s deposition testimony as evidence that her injuries are not new or more serious. As an example:

> Q. Next page, 62, that visit is on March 8 of [20]06. It says "B[.R.] continues to have some interpersonal struggles with her relationships with boys and mixed feelings she has towards sex and how she feels her 'abuse ruined it all for her.'"
> Did I read that accurately?
> A. That could be an accurate statement.
> Q. Did you feel that what Suzanne Horsley had done to you had ruined many aspects of your life?
> A. I feel that, yes.
> Q. Including but not limited to having healthy relationships with boys and being able to engage in sex in a healthy way?
> A. Yes.
> Q. You still have those problems today?
> A. Yes.

CP at 96.

We reject the conclusion that "problems with boys" as a young teen is, as a matter of law, the same injury as marital problems, lack of marital intimacy, confusion and trepidation about childbearing, and sexual dysfunction. B.R.'s deposition testimony simply confirms that a triable issue of fact exists as to what type of injuries she suffered and when she connected them with her abuse. These excerpts from B.R.'s deposition testimony do not address B.R.'s evidence that she experienced new and more serious injuries due to new life experiences as an adult and that she realized only after counseling with Dr. Dietzen in 2011 that these injuries were related to Horsley's abuse.

## B. PROBLEMS WITH EMPLOYMENT

B.R. also identifies work-related problems as a new injury that she connected to the childhood sexual abuse after counseling with Dr. Dietzen. Beginning in 2009, B.R. had difficulties and experienced panic at work as she was training to be a firefighter, "knowing [as a firefighter that she] might have to help a known child molester," and she was afraid to fall asleep at the fire station because she thought that her frequent, nocturnal yelling would hurt her job prospects. CP at 177. Dr. Dietzen declared that "[m]any child sexual abuse survivors struggle in the work place with accepting authority," that B.R. was struggling because she felt "controlled" at work, and that these symptoms can impede workplace success and development. CP at 207. B.R. also struggled to control her emotions as a high school volleyball coach because she experienced anger that someone in a similar position of authority exploited her vulnerability when she was younger and sadness when faced with the happiness that she never enjoyed as a teenager. B.R. was unaffected by any of these work-related problems in 2006 and did not experience them until 2009.

Horsley argues that these injuries are not different from the injuries that B.R. reported to Peck. Horsley again points to B.R.'s deposition testimony:

> Q. What other ways, if at all, have the symptoms or the residues of the abuse affected your ability to do your job?
> A. There's sometimes when I just don't feel like doing anything. My job is a very social job. We deal a lot with the public and there's sometimes where even with my job at the Red Lion where I just don't feel that I want to be around people.
> Q. That's something that you had years ago as well --
> A. Yes.
> Q. -- when you saw Peck?
> A. Yes.

CP at 98. This deposition testimony may conflict with B.R.'s declaration where she stated that she experienced different injuries when she worked as a volleyball coach and tried to become a firefighter.[3] And this deposition testimony does not address Dr. Dietzen's observations about B.R.'s difficulties with authority. These arguable conflicts in the evidence demonstrate that triable issues of fact exist regarding whether she suffered new work-related injuries within the three-year statute of limitations.

---

[3] We also conclude that B.R. did not file her declaration merely to create a conflict with her deposition testimony. It is generally impermissible to file an affidavit or declaration after giving "clear answers to unambiguous [deposition] questions which negate the existence of any genuine issue of material fact." *Marshall v. AC & S Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989) (alteration in original). A contradictory declaration "without explanation" is insufficient. *Marshall*, 56 Wn. App. at 185. Here, however, B.R.'s deposition testimony was not unambiguous and the declaration explains, with additional details, the specific new injuries that she suffered— marital problems, work problems, sexual dysfunction, and problems with her religion. Moreover, Dr. Dietzen's deposition testimony and declaration provide additional support for B.R.'s argument that these injuries are different in kind.

11

## C. PROBLEMS CONNECTING WITH RELIGION

Finally, B.R. identifies her inability to reconnect with and seek comfort from her religion as an injury that she did not connect to her abuse until her counseling with Dr. Dietzen. B.R. realized that "when [she] tried to return to church in 2007 and again in 2010 that religion is not comforting because of [her] abuse." CP at 177. She also discussed this problem with Dr. Dietzen. Dr. Dietzen declared that "[i]t is increasingly recognized that spirituality can have a major buffering effect on traumas such as sexual assault. . . . Because B[.R.] was abused by a church leader, and because she was blamed for her abuse by church leaders, she has experienced spirituality as a negative rather than a positive experience." CP at 207-08. Horsley advanced no contrary argument.

Viewing the evidence and all reasonable inferences in B.R.'s favor, and having no argument from Horsley against it, it is reasonable to infer that B.R. did not causally connect her discomfort with religion to her abuse until she discussed it with Dr. Dietzen beginning in 2011. Thus, summary judgment based on the statute of limitations is inappropriate on this claim.

## IV. CONCLUSION

In summary, B.R. argues that she experienced new or more serious injuries from her sexual abuse when she was married, became sexually active, discussed having children with her husband, got a job, and tried to reconnect with the church. B.R. presented evidence that these injuries are new or more serious because she did not understand how her sexual abuse would affect these parts of her life until she actually had these experiences and entered into sexual abuse counseling with Dr. Dietzen in 2011. This evidence, together with Horsley's contrary evidence and viewed in a light most favorable to B.R., demonstrates that material facts are in dispute. Thus, a jury must

12

No. 44874-2-II

resolve the factual issues and determine whether the statute of limitations bars her claim. *Oostra v. Holstine*, 86 Wn. App. 536, 543, 937 P.2d 195 (1997), *review denied*, 133 Wn.2d 1034 (1998). Accordingly, we reverse the trial court's summary judgment order and remand for trial.

Johanson, C.J.

JOHANSON, C.J.

We concur:

MAXA, J.

SUTTON, J.

13