2015 OCT 12 AM 9: 34



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SUSAN A. KIRCHOFF, f/k/a SUSAN LOWE, a/k/a SUSAN CASSIDY, a married person, | ) ) ) ) | No. 73666-3-I |
| Appellants, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| CITY OF KELSO, a municipal corporation of the STATE OF WASHINGTON, COWLITZ COUNTY, a municipal corporation of the STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: October 12, 2015 |

SPEARMAN, C.J. — In 2007, Susan Kirchoff sued the Department of Social

and Health Services (DSHS), alleging that its investigation of her home during

1979-1980 was negligent and resulted in Kirchoff remaining in the home with her

sexually abusive stepfather. The trial court dismissed Kirchoff's claim as time

barred. Under RCW 4.16.340, a claim based on childhood sexual abuse may be

brought within three years of the time the victim discovers the causal connection

between the wrongful act and her injury. We hold that a genuine question of fact

exists as to when Kirchoff made the causal connection between DSHS's failure

to act and her injury. We reverse and remand.

## FACTS

The facts of the case are largely uncontested. In 1979, Susan Kirchoff and her two older sisters, aged 13, 14, and 17, lived with their mother and their stepfather, Lotus Cassidy. The middle sister, C.B., disclosed to her school counselor that Cassidy was sexually abusing her.[1] The counselor contacted Child Protective Services (CPS).

Ann Watkins, a CPS social worker, investigated. Cassidy and the girls' mother denied the abuse and accused C.B. of making up stories to seek attention. Although the oldest sister, N.B., was pregnant, she denied being abused by Cassidy and initially denied being sexually active. Watkins stated that Kirchoff also denied the abuse. However, Watkins could not actually recall speaking with Kirchoff and the parties disputed whether Watkins ever interviewed Kirchoff.

C.B. did not want to remain in the home, and her mother allowed CPS to immediately place her in foster care without a court order. On December 10, 1979, C.B. took a polygraph test that indicated that her allegations about the sexual abuse were truthful. On January 7, 1980, officers from the Kelso Police Department questioned Cassidy about the allegations. When told that a polygraph examination confirmed C.B.'s story, Cassidy admitted that he had engaged in sexual intercourse with both C.B. and N.B. and had "gotten fresh"

---

[1] Individuals who were minor children at the time of the allegations and are not parties to this lawsuit are referred to by initials to maintain their privacy.

with Kirchoff. Clerk's Papers (CP) at 33-34. Cassidy was charged with indecent liberties in regards to C.B. and returned home to await trial. A dependency hearing was subsequently held for N.B. and the court ordered her removed from the home and placed in foster care.

At that time, Kirchoff was not aware that CPS had investigated the family and placed her sisters in foster homes because of the sexual abuse. Cassidy told Kirchoff that everything he did to her and her sisters was pleasurable and was to prepare them for married life. Kirchoff's mother told her that C.B.'s lies had gotten the family in trouble and that C.B. left because she wanted to live in a nicer house. Kirchoff stated that Cassidy continued to abuse her until about April, 1980, when she went to stay with relatives who lived out of state.

As an adult, Kirchoff experienced symptoms including anxiety, depression, irritability, and sexual aversions. She sought counseling and received treatment on various occasions. Kirchoff connected her symptoms to the abuse she had suffered as a child and worked hard to overcome the symptoms and forgive her stepfather.

In 2002, Kirchoff and her husband applied to DSHS for a foster care license and also applied to become adoptive parents. On both applications, Kirchoff stated that she had been sexually abused as a child. She stated that her sisters had been placed in foster homes because of the abuse and she did not know why she had not been placed in foster care.

In 2007, Kirchoff attended a class offered by DSHS to become a foster home licensor. During instruction about the duties of CPS, the instructor used a hypothetical in which CPS investigated allegations of abuse and removed two girls from a home but left a third, who then suffered further abuse. The instructor stated that this would be deficient performance by CPS. Upon hearing this, Kirchoff asserts that she realized for the first time that CPS had failed in its duty to protect her from further abuse and that she was injured as a result. After making this connection, Kirchoff felt betrayed. Her symptoms of irritability, anger, and depression were renewed. She also developed a gambling problem and further sexual aversion.

In 2008, Kirchoff consulted a psychologist, Dr. Laura Brown. Dr. Brown diagnosed aggravation of preexisting Post-Traumatic Stress Disorder (PTSD) attributable to betrayal trauma.[2] Betrayal trauma theory explains the trauma experienced as a result of feeling betrayed, as, for instance, when an individual or institution fails in a protective duty. Kirchoff suffered psychological distress as a result of learning that CPS should have protected her, and this distress aggravated her preexisting PTSD. Dr. Brown also stated that it would be "difficult to separate" the treatment necessary as a result of the PTSD that resulted from betrayal and the preexisting PTSD due to the abuse. CP at 208. "When you are treating PTSD, you are treating PTSD, so the betrayal trauma aggravates the

---

[2] Dr. Brown described all of Ms. Kirchoff's preexisting symptoms as symptoms of PTSD. While Ms. Kirchoff had received treatment for these symptoms previously, there is no indication that she had received a diagnosis of PTSD prior to meeting with Dr. Brown.

trauma related to the sexual abuse. You can't in treatment really segregate them one from the other." Id.

Kirchoff brought suit against DSHS in 2009.[3] DSHS moved for summary judgment on the grounds that Kirchoff's claim was time barred and that she had failed to establish the elements of her negligent investigation claim. The trial court granted summary judgment for DSHS. The court ruled that Kirchoff's claim was time barred because her 2007 discoveries about DSHS concerned only the legal basis for her claim, not facts about DSHS's actions. The trial court also ruled that betrayal trauma was not a qualitatively different harm from that which Kirchoff had previously attributed to the abuse.[4] The court did not address DSHS's argument that Kirchoff had failed to establish the elements of her claim.

## DISCUSSION

We review a summary judgment order de novo. Camicia v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014). Summary judgment based on the statute of limitations is appropriate only when there is no genuine issue of material fact regarding when the statutory period began. Young Soo Kim v. Choong-Hyun Lee, 174 Wn. App. 319, 323, 300 P.3d 431 (2013); CR

---

[3] Kirchoff joined the City of Kelso and Cowlitz County to the suit, but voluntarily dismissed these parties.

[4] DSHS also argued that Dr. Brown's testimony concerning "betrayal trauma" was inadmissible under Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). Under the Frye standard, expert testimony is admissible only where both "the theory underlying the evidence and the methodology used to implement the theory" are generally accepted in the scientific community. Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 175, 313 P.3d 408, 412 (2013) (citing State v. Gregory, 158 Wn.2d 759, 829-30, 147 P.3d 1201 (2006)), review denied, 179 Wn.2d 1019, 318 P.3d 280 (2014). The trial court assumed, without deciding, that the diagnosis of "betrayal trauma" satisfied the Frye requirements.

56(c). Where reasonable minds could draw more than one conclusion on the evidence, summary judgment is not appropriate. Smith v. Safeco Ins. Co., 150 Wn.2d 478, 485, 78 P.3d 1274 (2003); Morris v. McNicol, 83 Wn.2d 491, 494-95, 519 P.2d 7 (1974). The statute of limitations is an affirmative defense and the defendant bears the burden of proof. Korst v. McMahon, 136 Wn. App. 202, 208, 148 P.3d 1081 (2006). We perform the same inquiry as the trial court, review the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013).

RCW 4.16.340 establishes limitations for claims of childhood sexual abuse. The statute provides in relevant part:

> (1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within the later of the following periods:
>
> (a) Within three years of the act alleged to have caused the injury or condition;
>
> (b) Within three years of the time the victim discovered or reasonably should have discovered that the injury or condition was caused by said act; or
>
> (c) Within three years of the time the victim discovered that the act caused the injury for which the claim is brought . . . .

6

At issue in this appeal is subsection (1)(c).[5] That subsection applies where the victim is aware of the abuse and aware that she suffered harm as a result, but discovers a new and qualitatively different injury attributable to the abuse. Carollo v. Dahl, 157 Wn. App. 796, 801, 240 P.3d 1172 (2010). It also applies where the victim is aware of the abuse and aware of her injury, but discovers a causal connection, of which she was previously unaware, between the wrongful act and her harm. Hollmann, 89 Wn. App. at 325. Kirchhoff contends that her claim falls within both applications of subsection (1)(c).

Kirchoff first argues that she brought her claim within three years of suffering a new injury connected to the abuse, betrayal trauma. A claim of childhood sexual abuse may be brought within three years of the time that the victim discovers an injury that is "qualitatively different from other harms connected to the abuse which the plaintiff had experienced previously." Carollo, 157 Wn. App. at 801. "[M]ore severe manifestations of a prior injury" are not qualitatively different and are not within provision (1)(c). Id. at 803. The trial court concluded as a matter of law that Kirchoff had failed to establish that her diagnosis of betrayal trauma was qualitatively different from the injuries of which she had previously been aware, i.e., anxiety, depression, irritability, etc. The evidence in the record supports the trial court's ruling.

---

[5] Kirchoff also argues that her claim falls within subsection (b), but the argument is without merit. It is well settled that that subsection applies to cases involving repressed memory, "where the victim discovers his or her injury or condition was caused by a previously undiscovered act." Hollmann v. Corcoran, 89 Wn. App. 323, 334, 949 P.2d 386 (1997). That circumstance is not present in this case.

Kirchoff's expert, Dr. Brown, diagnosed aggravation of preexisting PTSD attributable to betrayal trauma. Dr. Brown stated that Kirchoff suffered psychological distress as a result of learning that CPS should have protected her, and this distress caused her to experience renewed symptoms of PTSD. However, Dr. Brown also stated that Kirchoff's PTSD predated her 2007 discovery of DSHS's alleged negligence and that the symptoms had "waxed and waned" throughout her adult life. Dr. Brown explained betrayal trauma as "aggravat[ing] the trauma related to the sexual abuse," and stated that the symptoms caused by the betrayal trauma could not be segregated from those caused by the abuse. CP at 208.

Because the betrayal trauma resulted in a recurrence and aggravation of a preexisting injury that Kirchoff was aware of prior to 2007, we affirm the trial court's ruling that the diagnosis of betrayal trauma was not a discovery of a new injury within RCW 4.16.340(1)(c).

RCW 4.16.340(1)(c) also applies when a victim discovers the causal link between the wrongful act and her injury. Carollo, 157 Wn. App. at 801. DSHS argues that RCW 4.16.340(1)(c) applies only to the discovery of a causal connection between the act of abuse and the victim's injury, not to the discovery of a causal connection between a third party's negligence and the victim's injury. We disagree.

C.J.C. v. Corp. of Catholic Bishop of Yakima, 138 Wn.2d 699, 709-10, 985 P.2d 262 (1999), is instructive. In that case, various religious organizations

8

argued that RCW 4.16.340 did not apply to negligence claims against third parties because, by the statute's plain language, it applies to "[a]ll claims or causes of action based on *intentional* conduct. . . ." RCW 4.16.340(1); C.J.C., 138 Wn.2d at 706-707 (emphasis added). The court rejected this argument because "an action is 'based on intentional conduct' if intentional sexual abuse is the starting point or foundation of the claim." Id. at 709. In a negligence claim against a third party, "intentional sexual abuse is the predicate conduct. . . ." Id. at 709. The Court thus held that "RCW 4.16.340 encompasses causes of action sounding in negligence against parties who did not themselves directly perpetrate acts of childhood sexual abuse, but who allegedly failed to protect child victims or to otherwise prevent the abuse." Id. at 714.

The C.J.C. court noted that this interpretation is consistent with the statutory scheme as a whole and with the Legislature's intent "to provide a broad avenue of redress for victims of childhood sexual abuse who too often were left without a remedy under previous statutes of limitation." Id. at 712-713. It is also consistent with the "strong public policy in favor of protecting children against acts of sexual abuse." Id. at 726. The Court further noted that the application of RCW 4.16.340 to negligence claims "is consistent with our cases recognizing a duty to prevent intentionally inflicted harm where the defendant is in a special relationship with . . . the victim, and where the defendant is or should be aware of the risk." Id. at 724. In such a case, the focus of the court's inquiry is "not on

9

where or when the harm occurred, but on whether the [third party] negligently caused the harm . . . when the risk was, or should have been, known." Id.

Here, as in C.J.C., the intentional act of abuse is the predicate conduct on which the claim is based. Thus, RCW 4.16.340(1)(c) is equally applicable to the victim who makes a causal connection between intentional abusive conduct and injury and the victim who makes a causal connection between a third party's negligent failure to protect and injury.

DSHS also argues that the statute of limitations began to run on Kirchoff's claim when she discovered the factual basis of her claim. DSHS asserts that Kirchoff had discovered at least by 2002 that her sisters had been placed in foster homes due to the abuse and, for reasons unknown to her, she was not. Relying on Allen v. State, 118 Wn.2d 753, 826 P.2d 200 (1992), DSHS argues that based on the facts Kirchoff knew in 2002, she had a duty to inquire whether a cause of action was available to her. DSHS is incorrect.

Allen, in addressing the general statute of limitation, RCW 4.16.080(2), held that "[t]he action accrues when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." Allen, 118 Wn.2d at 758. But a different statute is involved here. Unlike the general statute of limitation in Allen, RCW 4.16.340(1)(c) does not impose a duty of discovery on the plaintiff. Allen, 118 Wn.2d at 758; Korst, 136 Wn. App. at 207-208; Hollman, 89 Wn. App. at 334.

10

While RCW 4.16.340(1)(b) begins to run when the victim "discovered or reasonably should have discovered that the injury or condition was caused by said act," subsection (1)(c) omits the phrase "or should have discovered." RCW 4.16.340. This omission is consistent with the Legislature's recognition that the "victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs." Laws of 1991, ch. 212, § 1. RCW 4.16.340(1)(c) thus applies a subjective standard, and requires analysis of when the victim actually discovered the causal connection. Korst, 136 Wn. App. at 207-208; Hollman, 89 Wn. App. at 334.[6]

In the present case, the inquiry is when in fact Kirchoff discovered the causal connection between DSHS's allegedly negligent investigation and her injuries. Based on the evidence on the record, a jury could find that Kirchoff did not subjectively make the connection between DSHS's failure to act and her injury until 2007. Summary judgment based on the statute of limitations was thus improper.

DSHS also moved for summary judgment on the grounds that Kirchoff failed to establish breach or causation in her negligent investigation claim. The trial court did not address this argument, but DSHS urges us to consider it here.

---

[6] We also reject Kirchoff's contention that RCW 4.16.340(1)(c) begins to run when the plaintiff discovers her cause of action. She argues that she discovered her cause of action in 2007 when she learned that DSHS owed her a duty of protection and had breached that duty. However, the inquiry under (1)(c) is not when the plaintiff discovered a legal claim, but when she in fact became aware of a causal connection between the defendant's act and her injury. Korst, 136 Wn. App. at 207-208; Hollmann, 89 Wn. App. at 325.

11

We may affirm the superior court's ruling on any grounds adequately supported by the record. Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 147, 279 P.3d 500 (2012).

A negligent investigation claim arises from the State's statutory duty under RCW 26.44.050 to investigate allegations of child abuse. Tyner v. Dep't of Soc. & Health Servs., 14 Wn.2d 68, 1 P.3d 1148 (2000). To prevail on a claim for negligent investigation, the plaintiff must prove that DSHS conducted a faulty investigation and that the faulty investigation caused a harmful placement decision. M.W. v. Dep't of Soc. & Health Servs., 149 Wn.2d 589, 602, 70 P.3d 954 (2003); Petcu v. Dep't of Soc. & Health Servs., 121 Wn. App. 36, 56, 86 P.3d 1234 (2004). A placement decision is harmful if it removes a child from a nonabusive home, lets a child remain in an abusive home, or places a child in an abusive home. M.W., 149 Wn.2d at 595.

The record includes statements from Ann Watkins, the investigating social worker, that the investigation was conducted according to the standards and procedures in place at the time, including interviewing Kirchoff separately from her mother and stepfather. However, this testimony is disputed. Kirchoff and her mother both stated that CPS never interviewed Kirchoff. The record includes declarations from two experts who opine that CPS conducted a negligent investigation. The record establishes a question of fact as to whether DSHS's investigation was negligent.

DSHS also argues that Kirchoff did not establish causation because even if its investigation was faulty, that investigation was not the cause of Kirchoff being left in her stepfather's home. Watkins stated that at the time in question CPS did not have the authority to remove a child from her home. However, Watkins also stated that CPS could, at the time, ask the county prosecutor to seek dependency. She did not recall if CPS had made such a request concerning Kirchoff or if CPS was involved in the decision to seek a court order removing N.B., but not Kirchoff, from the home. The record establishes a question of fact concerning whether the allegedly negligent investigation caused the harmful placement decision.

Genuine questions of fact exist as to when Kirchoff discovered the causal connection between DSHS's allegedly negligent investigation and her injury and whether DSHS conducted a negligent investigation that resulted in a harmful placement decision. We accordingly reverse and remand for further proceedings consistent with this opinion.

Spearman, C.J.

WE CONCUR:

Schindler, J.

Becker, J.

13