# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TASH OHNEMUS, | No. 46944-8-II |
| Respondent/<br>Cross-Appellant, | |
| v. | |
| STATE OF WASHINGTON, | PUBLISHED IN PART OPINION |
| Appellant/<br>Cross-Respondent. | |

LEE, J. — Tasha Ohnemus filed suit against the State alleging, among other things, that the State was liable for Child Protective Services's (CPS) negligent investigations into allegations that her stepfather physically and sexually abused her and for her sexual exploitation by the State under RCW 9.68A.100. The superior court granted the State's summary judgment motion for dismissal of the negligence claims, but denied the State's summary judgment dismissal of the chapter 9.68A RCW claims.

The State challenges the denial of its summary judgment motion to dismiss Ohnemus's claim under RCW 9.68A.100,[1] arguing that the State cannot violate the statute and, even if it could,

---

[1] The superior court denied the State's summary judgment motion on this issue, so there remained an issue to be tried in this case and the parties did not have an appeal as a matter of right. Additionally, no motion for discretionary review of this issue was ever made to this court and no order accepting discretionary review of this issue was ever entered by this court.

RAP 2.3 states:

(b) . . . discretionary review may be accepted only in the following circumstances:

that no facts exist to support such a claim. Ohnemus challenges the dismissal of her negligence actions, arguing that an issue of material fact exists as to whether the discovery rule acted to toll the RCW 4.16.080(2) statute of limitations and that she is alleging "more serious" injuries such that she should still be able to bring a claim under RCW 4.16.340.

In the published portion of this opinion, we address the superior court's denial of summary judgment on Ohnemus's claims under chapter 9.68A RCW. We hold as a matter of law, under the facts of this case, that the State cannot violate RCW 9.68A.100, and therefore, the State is not liable to Ohnemus for costs and fees under RCW 9.68A.130. In the unpublished portion of this opinion, we affirm the superior court's summary judgment dismissal of Ohnemus's negligence claims against the State. Therefore, we reverse the superior court's denial of summary judgment dismissal on Ohnemus's chapter 9.68A RCW claims and affirm the superior court's grant of summary judgment dismissal to the State on Ohnemus's negligence claims.

---

. . . .

(4) The superior court has certified, or all the parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation.

Here, the superior court did not certify that the issue involves a controlling question of law as to which there is substantial ground for a difference of opinion or that immediate review of the order denying summary judgment may materially advance the ultimate determination of the litigation. Therefore, under RAP 2.3(b)(4), without a motion for discretionary review, a proper certification from the superior court, or an order accepting discretionary review, this issue is not properly before us. Nonetheless, we grant discretionary review of this issue sua sponte as it involves a controlling issue of law that will materially advance the ultimate termination of the litigation. RAP 1.2(a).

FACTS

In August 2012, Ohnemus filed suit against the State, alleging that the State, through CPS, was negligent in its investigation of allegations that Ohnemus's stepfather, Steven Quiles, sexually abused her and for failing to remove her from the abuse after its 1996 and 1997 investigations. One of Ohnemus's causes of action was based on her claim that the State violated RCW 9.68A.100.[2]

In August 2014, the State filed a motion for summary judgment and sought dismissal of Ohnemus's claims. The superior court granted the State's motion to dismiss Ohnemus's negligence claims, but denied the State's motion to dismiss Ohnemus's RCW 9.68A.100 claim.

On October 24, and on a joint motion by the parties, the superior court entered a partial final judgment dismissing Ohnemus's negligence claims with prejudice for purposes of CR 54(b),[3]

---

[2] RCW 9.68A.100. Commercial sexual abuse of a minor.

[3] CR 54(b) states:

> **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment. The findings may be made at the time of entry of judgment or thereafter on the courts own motion or on motion of any party. In the absence of such findings, determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

No. 46944-8

and certified the case for appellate review under RAP 2.3(b)(4).[4] On review, the State challenges the superior court's denial of its motion for summary judgment to dismiss Ohnemus's cause of action under RCW 9.68A.100.

ANALYSIS

A.    STANDARD OF REVIEW FROM SUMMARY JUDGMENT

We review summary judgment orders de novo, performing the same inquiry as the trial court. *Green v. A.P.C.*, 136 Wn.2d 87, 94, 960 P.2d 912 (1998). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Green*, 136 Wn.2d at 94. We draw all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). We may affirm the trial court's order on any basis that the record supports. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989).

B.    CHAPTER 9.68A RCW

The State challenges the trial court's denial of the State's summary judgment motion to dismiss Ohnemus's claims under chapter 9.68A RCW, the Sexual Exploitation of Children Act (SECA). Specifically, the State argues that dismissal is proper because the State is incapable of violating RCW 9.68A.100. We agree.

---

[4] As noted above, the superior court's certification did not comply with RAP 2.3(b)(4). However, because the controlling legal issues will materially advance the ultimate termination of the litigation, we grant discretionary review. RAP 1.2(a).

1.      The State Cannot Violate RCW 9.68A.100

The State argues that it cannot violate RCW 9.68A.100. To date, no court has considered this issue. We agree that as a matter of law, under the facts of this case, the State cannot violate RCW 9.68A.100.

Consideration of this issue requires review of RCW 9.68A.100 to determine the legislative intent. We review issues of statutory interpretation de novo. *Erakovic v. Dep't of Labor & Indus.*, 132 Wn. App. 762, 768, 134 P.3d 234 (2006). First, we attempt to determine legislative intent by examining the statute's plain language. *Id.* Only if the plain language is ambiguous do we consider other sources of statutory interpretation, such as legislative history. *Id.* In doing so, we avoid interpretations that create an absurd result. *Id.*

RCW 9.68A.100 is titled, "**Commercial sexual abuse of a minor—Penalties—Consent of minor does not constitute defense**," and states:

(1) A person is guilty of commercial sexual abuse of a minor if:

(a) He or she pays a fee to a minor or a third person as compensation for a minor having engaged in sexual conduct with him or her;

(b) He or she pays or agrees to pay a fee to a minor or a third person pursuant to an understanding that in return therefore such minor will engage in sexual conduct with him or her; or

(c) He or she solicits, offers, or requests to engage in sexual conduct with a minor in return for a fee.

(2) Commercial sexual abuse of a minor is a class B felony punishable under chapter 9A.20 RCW.

(3) In addition to any other penalty provided under chapter 9A.20 RCW, a person guilty of commercial sexual abuse of a minor is subject to the provisions under RCW 9A.88.130 and 9A.88.140.

(4) Consent of a minor to the sexual conduct does not constitute a defense to any offense listed in this section.

(5) For purposes of this section, "sexual conduct" means sexual intercourse or sexual contact, both as defined in chapter 9A.44 RCW.

In order to violate this statute, the State would need to have either "engaged in sexual conduct" with a minor, or negotiated for or solicited to "engage in sexual conduct with a minor." RCW 9.68A.100. Thus, to violate the statute, the State would have to be able to "engage in sexual conduct." RCW 9.68A.100.

The statute defines "sexual conduct" as "sexual intercourse or sexual contact, both as defined in chapter 9A.44 RCW." RCW 9.68A.100(5). RCW 9A.44.010 states that "sexual intercourse":

(1) . . . (a) has its ordinary meaning and occurs upon any penetration, however slight, and

(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex, except when such penetration is accomplished for medically recognized treatment or diagnostic purposes, and

(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.

RCW 9A.44.010(2) states that "sexual contact" means "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party."

Based on the plain language of the statute, the State cannot engage in "sexual intercourse" or "sexual contact" because the State is incapable of "penetration," the State does not have "sex organs," nor anything that could "contact" another's "sex organs," nor could anyone be "the same

or opposite sex" as the State. RCW 9A.44.010(1)(a)-(c), (2). Being incapable of "sexual intercourse" or "sexual contact," the State is thereby incapable of "engag[ing] in sexual conduct." RCW 9.68A.100; RCW 9A.44.010(1), (2).[5]

Because "having engaged in," or the intent to "engage in," "sexual conduct with a minor," is a requisite to being found guilty under RCW 9.68A.100, and the State is incapable of such conduct, we hold that, under the facts of this case, the State cannot violate RCW 9.68A.100. Therefore, the State is entitled to dismissal of Ohnemus's causes of action brought under RCW 9.68A.100 as a matter of law.[6]

2. Ohnemus Not Entitled To Costs And Fees

The State argues that Ohnemus is not entitled to the costs and fees under RCW 9.68A.130 because her cause of action brought under RCW 9.68A.100 fails as a matter of law. We agree.

RCW 9.68A.130 states, "A minor prevailing in a civil action arising from violation of this chapter is entitled to recover the costs of the suit, including an award of reasonable attorneys' fees." Because the only violation of the chapter that Ohnemus alleges is a violation of RCW 9.68A.100 and we hold as a matter of law that the State cannot violate RCW 9.68A.100, Ohnemus is not entitled to costs and fees under RCW 9.68A.130.

---

[5] We do not render an opinion as to whether the State could be held liable as an accomplice under RCW 9.68A.100.

[6] The State also argues that it cannot violate RCW 9.68A.100 because it is not a "person" and it is incapable of forming criminal intent. Given our holding that the State cannot engage in sexual conduct with a minor, and therefore the State cannot violate RCW 9.68A.100, we do not reach these arguments.

Under the facts of this case, the State cannot violate RCW 9.68A.100 as a matter of law. Therefore, we reverse the superior court's denial of summary judgment dismissal on Ohnemus's chapter 9.68A RCW  claims.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the following unpublished portion of this opinion, we address Ohnemus's cross-appeal of the trial court's dismissal of her negligence claims.  We hold that the discovery rule does not toll the statute of limitations because Ohnemus knew, or should have known through the exercise of due diligence, the factual basis for her current cause of action against the State more than three years prior to the August 2012 filing.  We also hold that Ohnemus's claim under RCW 4.16.340(1)(c) was properly dismissed because the record does not support an inference that she suffered an injury qualitatively different from other harms connected to the abuse, nor does the record support an inference that Ohnemus failed to make a causal connection between the defendant's conduct and the injuries she sustained.  Therefore, we affirm the superior court's summary judgment dismissal of Ohnemus's negligence claims.

ADDITIONAL FACTS

A.     FACTUAL HISTORY

1.     1996 Investigation

On April 24, 1996, when Tasha Ohnemus was eight years old and in the third grade, three of her friends told their school counselor that Ohnemus's stepfather, Steven Quiles, was physically and sexually abusing Ohnemus. The school counselor reported this information to Child Protective Services (CPS), which is an agency within the Department of Social and Health Services (DSHS). The CPS report summarized the complaint as stating that three fifth grade girls reported to the counselor that Ohnemus, then eight years old, "was being both sexually and physically abused." Clerk's Papers (CP) at 86. The girls reported seeing bruises on Ohnemus's "'arms, legs and back' area," and that her stepfather, Steven Quiles, would hit Ohnemus "'with a bat or whip'" if she was late getting home. CP at 86. The girls also reported that Quiles showed Ohnemus explicit magazines and required her to perform oral sex on him. The counselor stated to CPS that Ohnemus had been suspected of telling lies in the past, but the explicit nature of the allegations and her young age made it a "delicate" situation. CP at 87. The CPS report concluded by noting that a copy was sent to the Mason County Sheriff's Office.

On April 26, CPS worker Karen Thompson interviewed Ohnemus at school with the school counselor. Thompson noted that Ohnemus was clean, dressed appropriately, and willing to talk. Ohnemus told Thompson that Quiles was "mean to her, won't let her talk on the phone," and gave her long spankings with a "'stick' or 'pipe'." CP at 402. Ohnemus also told Thompson that "she had found 'disgusting' magazines in" Quiles's closet, that he "'watches disgusting movies'," and she described him masturbating. CP at 402. However, Ohnemus said Quiles "had never touched

9

her 'private parts' or made her touch his." CP at 402. Finally, Ohnemus told Thompson that while she had no fear of returning home, she wanted to be taken away from Quiles because he yelled and restricted her contact with friends.

Thompson called Ohnemus's mother later that day and informed her of the interview, what was said, and that CPS would be willing to provide for Ohnemus's day care until the end of the school year. Thompson subsequently left messages at the Quiles's family home on April 30, and on May 1, regarding DSHS's willingness to pay for day care arrangements. On May 2, Ohnemus's mother called Thompson to say day care had been arranged and the family was not interested in receiving financial assistance.

On May 29, Thompson and a detective with the Mason County Sheriff's Office interviewed Ohnemus. Ohnemus told them that Quiles had burned the magazines and cut up the videotape. She disclosed nothing else during the interview. The same day Thompson made an unannounced visit to the Quiles's home. She told them of that day's interview with Ohnemus, told them that law enforcement would not be pursuing the case further, told them to call if they needed further services, and cautioned Quiles to close his door when he was involved in private matters. Quiles and Ohnemus's mother told Thompson that the girls would be in day care over the summer and the next school year.

CPS closed the investigation, finding the case "unfounded according to [the] child." CP at 410. In her deposition for the present action, Ohnemus said she did not recall if the school counselor and a social worker interviewed her, nor did she remember if a social worker and a law enforcement officer interviewed her.

10

2.      1997 Investigation

On April 24, 1997—a year later, to the day—the same school counselor reported an allegation that Quiles had physically abused one of Ohnemus's sisters, Elizabeth, using a board with nails in it. The counselor asked Ohnemus and Ohnemus's younger sister, Kayla, about the incident; both confirmed that Quiles had punished their sister Elizabeth using a board with nails in it. Elizabeth told the counselor that her "dad never hit anybody." CP at 426. There were no allegations of sexual abuse. In her report, the counselor noted that the Quiles family had been reported the year before.

On May 1, a different CPS worker, Robert Kyler, met individually with Elizabeth and Ohnemus. Elizabeth denied any abuse, and said time out was the only form of punishment she received. Ohnemus told Kyler that she was punished with time out, but all the other kids got spanked. She also told Kyler that Elizabeth got spanked with a metal pipe with nails in it, and that Elizabeth was afraid of Quiles. Ohnemus gave no indications that any physical or sexual abuse was directed towards her.

On May 6, Kyler interviewed Ohnemus's mother to discuss the allegation of Quiles physically abusing Elizabeth. Ohnemus's mother supported Ohnemus's story, except Ohnemus's mother contended that Quiles's use of a pipe was accidental. Ohnemus's mother stated she was not concerned about her daughters being around Quiles, and that she was interested in family counseling services but was concerned about what Quiles's response would be.

Family Preservation Services (FPS) initiated in-home counseling shortly thereafter. From FPS, Kyler later learned that the children had been enrolled in counseling and a day care program, and that the children would be going to New York to stay with Quiles's parents.

3.     2001 Request for Services

In June 2001, Ohnemus's mother contacted DSHS and asked for Family Reconciliation Services (FRS) because Ohnemus, who was 14 years old at the time, was not following house rules and was antagonizing the other children. CPS was not involved in this request and the records from this request do not reference the 1996 or 1997 CPS investigations. The case was closed in September 2001.

4.     2002 Request for Services

On April 23, 2002, Ohnemus's mother contacted DSHS again and asked for a Youth-at-Risk assessment of Ohnemus. Her mother complained that Ohnemus had been returned by sheriff's deputies after running away from home over the weekend and continued to not follow family rules. Ohnemus's mother wanted the DSHS worker to make the assessment using the notes from the family counseling sessions conducted in 2001. The DSHS worker told Ohnemus's mother that he would need to conduct a visit with them and would prefer to have a family counseling session before creating a Youth-at-Risk assessment. CPS was similarly not involved in this request, and the records from this request do not reference the 1996 or 1997 CPS investigations; but, the 2001 request is discussed. Ohnemus's mother refused a meeting between the family and the DSHS worker. The case was closed in April 2002.

5.     2002 Disclosure of Abuse

On May 9, 2002, Ohnemus, almost 15 years old and in the 9th grade, and her sister disclosed to another school counselor that they had been sexually molested and exploited by Quiles. CPS was notified the same day, and CPS then notified the Mason County Sheriff's Office.

CPS removed all of the girls from the house and placed them with Division of Children and Family Services (DCFS).

Ohnemus was interviewed by a Mason County Sheriff's detective and a CPS worker on May 16, 2002. During the interview, Ohnemus described Quiles groping Ohnemus, requiring her to perform oral sex on him, and recording her naked for child pornography trades on the internet. She also described Quiles's nonsexual physical abuse of her. Ohnemus told the police and CPS that the abuse had been going on since she was in fourth or fifth grade.

Quiles was arrested and pleaded guilty to third degree rape of a child, two counts of first degree incest, second decree child molestation, possession of depictions of a minor engaged in sexually explicit conduct, and sexual exploitation of a minor. He was sentenced to 10 years in prison.

6. July 2002 Inpatient Care

In July 2002, Ohnemus voluntarily entered an inpatient treatment facility. She was suffering from persistent suicidal thoughts, "recurrent and intrusive recollections and flashbacks" of Quiles's abuse, post-traumatic stress disorder (PTSD), and major depression "without psychotic features." CP at 193-94. Five days after being admitted, Ohnemus was discharged and "was noted to be quite improved and felt ready to be discharged home." CP at 186-87.

7. March-April 2003 Inpatient Care

On March 24, 2003, Ohnemus was admitted to the Adolescent Treatment Unit at Kitsap Mental Health Services for expressing suicidal thoughts. Her depression decreased during her stay, and on April 15, 2003, Ohnemus was "deemed stable for discharge" as a least restrictive

alternative. CP at 273. Ohnemus's discharge diagnosis included chronic PTSD and depressive disorder not otherwise specified.

8.      August 2003 Inpatient Care

On August 1, 2003, Ohnemus was detained during her outpatient therapy session for not following the rules of her least restrictive alternative program. She was subsequently admitted for the second time to the Adolescent Treatment Unit, and as her intake paperwork noted, this was her third inpatient admission for psychiatric problems. There, Ohnemus reported that she was re-experiencing the past trauma of her father's sexual abuse in the form of "recurrent nightmares" and "distressing, recurrent, intrusive thoughts, images, and recollection of her past abuse," which "caused [her] to experience intense psychologic and physiologic reactivity." CP at 267.

On August 7, 2003, Ohnemus had a one-on-one session with a professional at the Adult Treatment Unit. The handwritten notes from that session contained the following:

> CT [Ohnemus] did talk about the abuse she's experienced starting in the 2nd grade. Also talked about being "very angry" @ CPS and "hating" them for not believing her allegations and allowing the abuse to continue "so much longer." She reported they told her she was "just trying to get attention."

CP at 584. On August 8, Ohnemus was discharged.

9.      May 2005 Ohnemus turns 18

Ohnemus was born on May 24, 1987. On May 24, 2005, Ohnemus turned 18 years old.

10.      March 2006 Counseling

On March 16, 2006, Ohnemus sought counseling through Kitsap Mental Health Services. Ohnemus reported that she suffered from PTSD and was having extended periods of deep depression that were followed by periods of increased energy and money spending.

14

11.    October 2007 Doctor Visit

In early October 2007, Ohnemus consulted a doctor complaining of, among other ailments, insomnia and stress from going through a recent divorce. She told the doctor that she suffered from PTSD and bipolar disorder, that she had been sexually abused, and that she had "been tried on 17 different psychotropic medications" with minimal effect. CP at 279.

By the end of October, she was presenting with "significant flashbacks of the sexual abuse, anxiety in social situations, nightmares, difficulty with sleep, isolated, weepy affect easily, mood swings, decreased energy level and interest in activities, using marijuana for pain management and helping her appetite increase." CP at 301; *see also* CP at 286 (presenting concerns of "[s]ignificant flashbacks of previous trauma, anxiety in social situations, nightmares, difficulty with sleep and appetite, weepy affect at times, mood swings, decreased energy level or interest in activities, physical pain impacting performance and mood"). The doctor's progress notes from October 31, 2007, state that Ohnemus "reports that she tried to tell CPS and social workers about [Quiles's] sexual abuse. [Quiles] was finally caught and prosecuted . . . . [Ohnemus] had to testify in court." CP at 300.

12.    November 2007 through September 2008

From the beginning of November 2007 through the end of September 2008, Ohnemus had eight doctor visits to monitor the progression of, among other things, her PTSD and bipolar disorder. She self-reported having had approximately 10 inpatient stays. She also continued to suffer from severe flashbacks, mania, paranoia, and nightmares. During this time, on May 24, 2008, Ohnemus turned 21.

13.     Sporadic Counseling and Treatment from 2009 through 2013

Ohnemus received counseling sporadically at Kitsap Mental Health and Harrison Medical Center from 2009 through 2013.

a.     2009 and 2010

In July 2009, Ohnemus sought inpatient care, citing thoughts of suicide, flashbacks to the years of sexual abuse, and suffering from PTSD and bipolar disorder. Ohnemus told the social workers at the inpatient care facility that "she was sexually abused from ages 5-15 y/o and has PTSD because of this." CP at 175. In January 2010, Ohnemus told her counselor that she was molested by Quiles "from age 6-15," and she told the counselor that:

> I had an abortion 2 months after [Quiles's] trial because it was his . . . . [M]y friends gave me my yearbook and everything that people wrote was about what had happened . . . and I didn't want to deal with it . . . I think I have been in survivor mode since then.

CP at 207.

b.     2011

Ohnemus brought Social Security forms to counseling sessions in 2011, and the counselor helped her complete the forms. During a June 2011 counseling session, Ohnemus reported to her counselor that she had retained a new lawyer to help her file a crime victim's claim for the abuse she suffered from Quiles.

i. Social Security Administration Claim

Ohnemus filed her claims for Social Security Disability benefits on April 28, 2011 and on May 5, 2011. On the Social Security Disability forms, Ohnemus identified bipolar disorder, PTSD, personality disorder, and anxiety as the physical or mental conditions that limited her ability to

work.  Ohnemus stated on the forms that she had been to the emergency room at Harrison Medical Center "at least once a year for PTSD, anxiety, [and] suicidal thoughts."  CP at 338 (some capitalization omitted).  She said that Harrison Medical Center treated her with psychotherapy medication, and referred her to Kitsap Mental Health.  Ohnemus reported that she had received more than one inpatient stay for PTSD at Kitsap Mental Health and was currently being seen there for her PTSD and bipolar disorder.  On the form, Ohnemus added:

> [I] had PTSD due to being raped and molested by my stepdad from age 5 to 15.  It is very [h]ard to deal with because he video taped me naked and put it on the computer so [a] lot of people I grew up with have seen me on the computer.  He was arrested on 6 [c]ounts of sexual felonies in 2002.  After everything came out into the open was when [I] was first admitted into inpatient treatment at KMH [Kitsap Mental Health].

CP at 341(some capitalization omitted).  The Social Security Administration disapproved her claim on October 25, 2011, noting, among other things, that Ohnemus was "being treated for a mood disorder and PTSD, with notes showing an improvement in symptoms with medication."  CP at 328.

ii.  Crime Victim's Claim

By August of 2011, Ohnemus reported to her counselor that she had learned that she could receive "about $150k in crime victim benefits" and "because of this [Ohnemus] got a huge amount of information about her step father [sic]."  CP at 213.  Ohnemus's declaration in support of the present action states that in the summer of 2011 she "obtained [Quiles's] criminal/police investigation file from 2002 regarding his conduct with me and my sister."  CP at 481.  She said she obtained this file as part of her crime victim's claim application.  In her declaration, she described the file as follows:

17

It contained a lot of information I had not seen or known about, including the 1996 and 1997 intakes by CPS; witness statements, together with the interview transcripts from me and my sister; the statement by my mother identifying me in some of the photos from my father's computer; and the pages of information about his computer.

CP at 481. Ohnemus's declaration also states that she told her counselor at Kitsap Mental Health that the discovery of this new information was causing her to feel overcome by despair.

The counselor's notes do not reflect that Ohnemus reported any change in her emotions, or any new distresses, attributed to reopening her crime victim's claim. However, the counselor submitted a declaration stating that Ohnemus was affected by the information she obtained such that "she needed intensive treatment," and that "[s]he was unaware of the extent of her injuries." CP at 485. In her own declaration, Ohnemus stated that she has "just started to realize and come to terms with the notion that I might never fully recover from my injuries." CP at 482.

          c.      2012 and 2013

Days before her 25th birthday in May 2012, Ohnemus went to Harrison Medical Center and requested inpatient care, again complaining of severe flashbacks and anxiety. At that time, she described her condition as "very anxious with chest pain[,] having flashbacks to when she was sexually molested from ages 5-15 and having thoughts of wanting to hurt herself." CP at 164-65. Harrison Medical Center contacted Kitsap Mental Health, who sent a mental health professional to meet with Ohnemus. The notes from this meeting state that Ohnemus "has a history of severe childhood sexual abuse by her step father [sic] . . . [and] is overwhelmed with frequent flashbacks and nightmares related to childhood trauma." CP at 231. Further, Ohnemus reported that "she's 'just overwhelmed and needs to be taken care of.'" CP at 231. In August 2012, Ohnemus filed the present action against the State.

Ohnemus returned to Harrison Medical Center in April 2013, complaining of flashbacks "related to a lawsuit against CPS for reported sexual abuse that happened during her childhood." CP at 162. Harrison Medical Center contacted Kitsap Mental Health and arranged an appointment for Ohnemus at Kitsap Mental Health for the next morning. No record of a visit to Kitsap Mental Health the following morning exists in the record on appeal.

Ohnemus's attorneys retained clinical psychologist Steve Tutty as an expert witness in this case. Tutty submitted a declaration stating that in 2013 Ohnemus's treatment began to include an "anti-psychotic psychotropic medication," which, he said, indicates Ohnemus is receiving "more significant and long term medical care than previously received." CP at 489. He concluded, "It appears Ms. Ohnemus is only now aware of the full extent of her injuries." CP at 489.

B.    PROCEDURAL HISTORY

Ohnemus's August 2012 suit alleged that the State through CPS, was negligent in its investigation and for failing to remove her from the abuse after its 1996 and 1997 investigations. It also alleged claims under 18 U.S.C. § 2252,[7] 18 U.S.C. § 2255.[8] In August 2014, the State filed a motion for summary judgment, asserting that Ohnemus's negligence claims were barred by the statute of limitations and that she failed to state a claim under 18 U.S.C. § 2252 and § 2255.

On September 12, 2014, the superior court granted the State's motion for summary judgment as to Ohnemus's "childhood sexual abuse claims" and her "claim under 18 U.S.C.

---

[7] 18 U.S.C. § 2252. Certain activities relating to material involving the sexual exploitation of minors.

[8] 18 U.S.C. § 2255. Civil remedy for personal injuries.

No. 46944-8

§ 2252 and § 2255."[9]  CP at 610.  Ohnemus challenges the superior court's dismissal of her negligence claims related to her childhood sexual and physical abuse.

ANALYSIS

A.    STATUTE OF LIMITATIONS—CLAIMS DISMISSED ON SUMMARY JUDGMENT[10]

Ohnemus argues the superior court erred in dismissing her negligence claims relating to her sexual and physical abuse because issues of material fact remain.  Specifically, Ohnemus argues that issues of fact exist as to when she discovered, or should have discovered, her claims for the State's 1996 and 1997 investigations, and as to when she discovered "more serious injuries" ostensibly attributable to the State's investigations.  Br. of Resp't/Cross-Appellant at 2.

---

[9] The September 12 order did not address the superior court's decision on Ohnemus's physical abuse claims.  After reconsideration, the superior court clarified its September 12 order to grant summary judgment dismissal of Ohnemus's negligence claims related to her childhood sexual and physical abuse.

[10] The superior court's partial final judgment granting summary judgment dismissal of Ohnemus's negligence claims related to her sexual and physical abuse are properly before us pursuant to RAP 2.2(d).  Under RAP 2.2(d):

> In any case with multiple parties or multiple claims for relief, . . . an appeal may be taken from a final judgment that does not dispose of all the claims . . . as to all the parties, but only after an express direction by the trial court for entry of judgment and an express determination in the judgment, supported by written findings, that there is no just reason for delay. . . . In the absence of the required findings, determination and direction, a judgment that adjudicates less than all the claims . . . . or adjudicates the rights and liabilities of less than all the parties, is subject only to discretionary review until the entry of a final judgment adjudicating all the claims, . . . rights, and liabilities of all the parties.

Here, the superior court found that there is no just reason for delay in entering final judgment and that "the statute of limitations question . . . involve[s] [a] controlling question of law to which there is substantial ground for a difference of opinion."  CP 679-80.  Thus, under RAP 2.2(d), the order on partial final judgment permits Ohnemus to appeal the superior court's summary judgment dismissal of her negligence claims.

First, we hold that Ohnemus's failure to exercise due diligence when she knew or should have known the factual basis for her cause of action is fatal to her assertion that the discovery rule tolled her claim until 2011. Second, we hold that Ohnemus's claim under RCW 4.16.340(1)(c) was properly dismissed because the record does not support an inference that she suffered an injury qualitatively different from other harms connected to the abuse, nor does the record support an inference that Ohnemus failed to make a causal connection between the defendant's conduct and the injuries she sustained.

1.      RCW 4.16.080(2) and the Discovery Rule

Ohnemus contends that her August 2012 complaint is not time-barred by RCW 4.16.080(2)'s three year statute of limitations because, under Washington's "discovery rule," her cause of action did not accrue until 2011 when she obtained the 2002 investigation file on Quiles's arrest. Br. of Resp't/Cross-Appellant at 21-22. We disagree and hold that Ohnemus's negligence claims are barred by the three year statute of limitations in RCW 4.16.080(2).

a.      Legal Standard

RCW 4.16.080(2) places a three year limit on a person's ability to file a claim for injuries. *Green*, 136 Wn.2d at 95. Generally, the statute of limitations begins to run "at the time the act or omission causing the tort injury occurs." *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 602, 123 P.3d 465, *review denied*, 155 Wn.2d 1012 (2005). However, under RCW 4.16.190(1), if the person entitled to bring an action under RCW 4.16.080 is under the age of 18 at the time his or her cause of action would otherwise accrue, the statute of limitations would not begin running until the person reaches the age of 18.

Another mechanism for tolling the accrual of a cause of action and its attendant statute of limitations is the "discovery rule." "Under Washington's discovery rule, a cause of action does not accrue until a party knows or reasonably should have known the essential elements of the possible cause of action." *Clare*, 129 Wn. App. at 602; *see also Green*, 136 Wn.2d at 95 (stating the same). The "should have known" language under Washington's discovery rule requires the prospective plaintiff to exercise "due diligence in discovering the basis for the cause of action" after he or she is "'placed on notice.'" *Clare*, 129 Wn. App. at 603 (quoting *Green*, 136 Wn.2d at 96); *see also Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992) ("The discovery rule requires a plaintiff to use due diligence in discovering the basis for the cause of action.").

The discovery rule does not require the plaintiff to understand all of the legal consequences of his or her cause of action. *Green*, 136 Wn.2d at 95. Thus, the cause of action accrues and the attendant statute of limitations begins to run "when the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Allen*, 118 Wn.2d at 758.

A due diligence inquiry means "[t]he plaintiff is charged with what a reasonable inquiry would have discovered." *Green*, 136 Wn.2d at 96; *Clare*, 129 Wn. App. at 603. Whether due diligence has been exercised is normally a question of fact, but can be determined as a matter of law when reasonable minds could reach only one conclusion. *Clare*, 129 Wn. App. at 603. "The plaintiff bears the burden of proving that the facts constituting the claim were not and could not have been discovered by due diligence within the applicable limitations period." *Id.*; *see accord Allen*, 118 Wn.2d at 760.

22

In short, once Ohnemus suffered ""'some appreciable harm'" allegedly caused by the State's negligence, the discovery rule only tolls the statute of limitations until Ohnemus discovered, or "through the exercise of due diligence, should have discovered, the basis for the cause of action" against the State. *Clare*, 129 Wn. App. at 603 (quoting *Green*, 136 Wn.2d at 96). Thus, we must determine if Ohnemus, viewing all inferences in a light most favorable to her, has established a question of fact as to whether she did not discover, and could not have discovered through the exercise of due diligence, the facts giving rise to her negligence claims more than three years before she filed her complaint on August 15, 2012. *See Hisle*, 151 Wn.2d at 860; *Clare*, 129 Wn. App. at 603. We hold that summary judgment dismissal of Ohnemus's negligence claims was proper because reasonable minds could not differ in concluding that she knew or should have known the factual basis for her current cause of action against the State more than three years prior to the August 2012 filing of this lawsuit.

b.      Statute of limitations not tolled by discovery rule

Ohnemus claims that the State conducted negligent investigations in 1996 and 1997, and she suffered harm therefrom. Because Ohnemus was under 18 years old in 1996 and 1997, the statute of limitations on that claim was tolled until her 18th birthday in May 2005. RCW 4.16.190(1); *Clare*, Wn. App. at 602. For the limitations period to be tolled further requires application of the discovery rule. *Green*, 136 Wn.2d at 95.

Ohnemus points out that the State and various social workers were involved in 1996, 1997, 2001, and 2002, and the medical notes from 2003 and 2007, do not indicate which involvement or involvements Ohnemus was referring to in her 2003 or 2007 counseling sessions. However, even when the facts are viewed in a light most favorable to Ohnemus, the record demonstrates that the

only State involvement that Ohnemus could have been referencing in her 2003 and 2007 counseling sessions were the 1996 and 1997 investigations.

The 2003 medical note was recorded while Ohnemus was going through inpatient care in the Adolescent Treatment Unit at Kitsap Mental Health Services, and on the progress note her counselor wrote:

> CT [Ohnemus] did talk about the abuse she's experienced starting in the 2nd grade. Also talked about being "very angry" @ CPS and "hating" them for not believing her allegations and allowing the abuse to continue "so much longer." She reported they told her she was "just trying to get attention."

CP at 584. Then, in a progress note made in October 2007, her therapist noted that that Ohnemus "reports that she tried to tell CPS and social workers about [Quiles's] sexual abuse. [Quiles] was finally caught and prosecuted . . . . [Ohnemus] had to testify in court." CP at 300.

Neither medical note could be referencing the State's involvement in 2001 nor 2002. The State's involvement in 2001 consisted of Family Reconciliation Services at the request of Ohnemus's mother because Ohnemus was being "assaultive towards her sisters" and not following the house rules. CP at 593. At that time, Ohnemus told the social worker that she did fight with her sisters, she attended school regularly and did well, had no criminal history, and "doesn't feel that there is a big problem at home." CP at 591. The social worker noted that the "[f]amily members were guarded during all sessions and participation was very limited by both adults and children," but that Ohnemus "did attempt to participate during some of the sessions," asking to be closer to her mother to talk about personal and emotional issues. CP at 596. There is no indication that Ohnemus made, or attempted to make, any allegation of abuse by Quiles to the State during the 2001 involvement for which she could later be angry at the State for not acting upon.

Similarly, the State's involvement in April 2002 was a response to Ohnemus's mother requesting Family Reconciliation Services. However, this time the State did not meet with Ohnemus or anyone else in the family because Ohnemus's mother refused to allow the social worker to meet with the family or ask questions.[11] Thus, Ohnemus could not be referring to the State's involvement in 2002 as a time when she tried to tell CPS about Quiles's abuse because she never had any interaction with the State at the time, nor is there anything in the record to indicate she knew the State had been contacted by her mother.

Ohnemus attempts to discredit the medical notes from 2003 and 2007 by calling them "hearsay entries" that Ohnemus did not write nor endorse. Reply Br. of Resp't/Cross-Appellant at 4. But Washington courts have affirmed a summary judgment dismissal of a RCW 4.16.080(2) claim based entirely on a single isolated entry in a medical record. *Clare*, 129 Wn. App. at 604. Also, even if the medical notes are "hearsay," they are admissible as statements for purposes of medical diagnosis or treatment. ER 803(a)(4).

Ohnemus argues that she had no reason to inquire into whether the State caused her harm because Quiles's abuse was another "facially logical explanation" for her damages. Reply Br. of Resp't/Cross-Appellant at 6-7. Ohnemus is correct that where a plaintiff knows of another "facially logical explanation" for her injuries, she is not required as a matter of law to seek out additional causes of her suffering. *Lo v. Honda Motor Co.*, 73 Wn. App. 448, 456, 869 P.2d 1114 (1994); *Winbun v. Moore*, 143 Wn.2d 206, 219, 18 P.3d 576 (2001).

---

[11] The next 2002 involvement was in May of 2002, where Ohnemus and her sister disclosed the abuse and were taken into protective custody.

However, the record here shows that at least by her doctor's visit on October 31, 2007, more than three years before filing the instant action, Ohnemus knew that the State had a duty to protect her from Quiles, that she believed the State breached that duty by not protecting her, and that she suffered his abuse "'so much longer'" because of the State's failure to protect her. CP at 584. Thus, while she clearly understood that one facially logical explanation for the harm she suffered was Quiles's abuse, the record is also clear that she had formulated a second facially logical explanation that the reason she suffered more of the abuse was because the State allegedly failed to protect her. Her failure to investigate the validity of the second explanation renders her claim barred by expiration of the statute of limitations.

Ohnemus next argues that a plaintiff must have a factual basis for a claim before the statute of limitations is triggered. Again, Ohnemus correctly states the law, but is incorrect in how it applies to her case.

Ohnemus cites *Webb v. Neuroeducation, Inc., P.C.*, 121 Wn. App. 336, 88 P.3d 417 (2004). There, a father sued a psychologist for malpractice and the issue was when the father should have known of the psychologist's alleged malpractice. *Id.* at 344. The father had submitted a declaration in 1998 stating that he "'believe[d]'" or "'strongly believe[d]'" that his son had been coached into fearing him by the mother and psychologist. *Id.* at 340-41. On appeal, the court held that Webb did not "have a factual basis for his opinions and grounds for his complaint" until he received the Guardian ad Litem report in 1999, and that his "belief allegations" in his 1998 declaration were "necessarily speculative" as they were "guess[es] at things he clearly could not know" because the psychologist refused to speak to him. *Id.* at 344.

26

Here, in contrast, Ohnemus's belief that the State had breached its duty to her was based on facts she clearly could, and did, know. Specifically, that she had tried to tell CPS about Quiles's abuse, and that she was angry at CPS for not believing her and allowing the abuse to continue "so much longer." CP at 584. Thus, the reasoning that preserved the plaintiff's claim in *Webb* does not preserve Ohnemus's claim.[12]

The record shows Ohnemus actually knew of the State's 1996 and 1997 involvement, and shows that in 2003 and 2007 she was frustrated by CPS's failure to remove her from the abuse pursuant to the 1996 and 1997 investigations. Therefore, she then knew, or through the exercise of due diligence should have known, all of "the essential elements of the possible cause of action" more than three years prior to filing this action. *Clare*, 129 Wn. App. at 602.

The essential elements for a tort claim are duty, breach, causation, and damages. *Green*, 136 Wn.2d at 95. Ohnemus's statements in 2003 and 2007 establish that she recognized the State had a duty to protect her, that she believed the State breached that duty, that she believed the State's breach caused the abuse to continue; and that she recognized the continued abuse caused her damage. A due diligent pursuit of her belief that the State had breached its duty to protect her would have included her obtaining Quiles's investigation file and the subsequent information in which her current claim is rooted. *Green*, 136 Wn.2d at 96 ("The plaintiff is charged with what a

---

[12] Ohnemus asserted in her deposition that she did not remember the interviews with the school counselor and social worker that occurred in 1996 and in 1997. This, however, does not create an issue of material fact because: (1) self-serving testimony need not be taken at face value when reviewing summary judgment; but more importantly, (2) she remembered CPS's involvement, and her attempts to tell them of the abuse in 2003, when she 16, and in 2007, when she was 20. Thus, she was on inquiry notice at least in 2007 to investigate why CPS had not intervened and if they had been negligent in failing to intervene.

reasonable inquiry would have discovered."). We hold that Ohnemus's failure to exercise due diligence when she knew or should have known the factual basis for her cause of action is fatal to her assertion that her negligence action did not accrue until 2011 based on the discovery rule.

2.    RCW 4.16.340(1)(c)

Ohnemus assigns error to the trial court's summary judgment dismissal of her claims brought under RCW 4.16.340.[13]    Ohnemus argues that a genuine issue of material fact exists as to whether she "recently discovered injuries that are significantly more serious than she previously knew." Br. of Resp't/Cross-Appellant at 42. We affirm the trial court's dismissal of Ohnemus's claim under RCW 4.16.340(1)(c) because the record does not support an inference that she suffered an injury qualitatively different from other harms connected to the abuse, nor does the record support an inference that Ohnemus failed to make a causal connection between the defendant's conduct and the injuries she sustained.

The State argues that RCW 4.16.340 does not apply to the State because the State did not perpetrate any acts of childhood sexual abuse against Ohnemus. But RCW 4.16.340 encompasses

---

[13] RCW 4.16.340 provides that:

(1) All claims or causes of action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse shall be commenced within . . .

    . . . .

    (c)    . . . three years of the time the victim discovered that the act caused the injury for which the claim is brought:

    PROVIDED, That the time limit for commencement of an action under this section is tolled for a child until the child reaches the age of eighteen years.

causes of action sounding in negligence against parties who did not themselves perpetrate acts of childhood sexual abuse but who failed to protect child victims or otherwise prevent the abuse. *C.J.C. v. Corp. of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999). Here, Ohnemus claims the State was negligent in failing to protect her against further sexual abuse by Quiles. Thus, the State's assertion that RCW 4.16.340 does not apply to the State fails.

Under RCW 4.16.340, a claim based on childhood sexual abuse may be brought within three years of the time the victim discovers the causal connection between the wrongful act and her injury. At issue in this appeal is subsection (1)(c). This subsection applies where the victim is aware of the abuse and aware that she suffered harm as a result, but discovers a new and qualitatively different injury attributable to the abuse. *Carollo v. Dahl*, 157 Wn. App. 796, 801, 240 P.3d 1172 (2010). It also applies where the victim is aware of the abuse and aware of her injury, but discovers a causal connection, of which she was previously unaware, between the wrongful act and her harm. *Id.*; *Hollmann v. Corcoran*, 89 Wn. App. 323, 325, 949 P.2d 386 (1997).

Ohnemus contends that the issue of material fact is "whether [she] has recently discovered injuries that are significantly more serious than she previously knew." Br. of Resp't/Cross-Appellant at 42. Therefore, it appears that she is arguing that her claim falls into the first application, by claiming she has discovered new injuries and arguing to this court that it should not follow the *Carollo* court's precedent. *See Carollo*, 157 Wn. App. at 801. However, we address both applications of subsection (1)(c).

a. "Qualitatively Different" Injury

A claim of childhood sexual abuse may be brought within three years of the time that the victim discovers an injury that is "qualitatively different from other harms connected to the abuse which the plaintiff had experienced previously." *Id.* "[M]ore severe manifestations of a prior injury" are not qualitatively different and are not within the purview of subsection (1)(c). *Id.* at 803.

In *Carollo*, 157 Wn. App. at 798, the plaintiff was molested as a teenager by a camp counselor. In 1988, he sought counseling for the emotional difficulties he was having. *Id.* Through that counseling, he learned that his childhood sexual abuse was likely the source of his difficulties. *Id.* He received counseling again in 1995, at which time he was diagnosed with post-traumatic stress disorder resulting from the molestation. *Id.* He also suffered from depression, flashbacks, and nightmares. *Id.* at 798-99. In 2008, he filed suit after his symptoms became "much worse" and he became unable to function at his job. *Id.* at 799. The new symptoms included regular nightmares, memory loss, dissociative periods, panic disorder, major anxiety, major depressive disorder, and agoraphobia. *Id.* His counselor said the new symptoms were related to the childhood sexual abuse and that it "is not common or expected that new symptoms will occur or to see increases in symptoms like those exhibited by" the plaintiff. *Id.*. Division Three of this court held that Carollo was merely "claiming that the severity of his most recent symptoms should entitle him to the more lenient provisions of the discovery of harm provision in the statute" not that he had only recently connected his emotional harm to childhood sex abuse. *Id.* at 802. Therefore, the court dismissed the suit as time barred. *Id.* at 803.

Ohnemus asks us to disregard Division Three's holding in *Carollo* because she argues that it alters the legislature's intent. We decline her request.

*Carollo* does not alter the legislative intent in looking for a different injury attributable to the abuse. In fact, the *Carollo* court noted the legislative findings of intent attached to RCW 4.16.340 and addressed the argument that Ohnemus now makes to this court.

In revising RCW 4.16.340, the legislature attached six findings of intent, of which Ohnemus highlights findings (4) and (5). LAWS OF 1991, ch. 212, § 1.. Findings (4) and (5) state:

> (4) The victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs.

> (5) Even though victims may be aware of injuries related to the childhood sexual abuse, more serious injuries may be discovered many years later.

LAWS OF 1991, ch. 212, § 1. Ohnemus highlights findings (4) and (5) as evidence that the legislature did not intend for the injuries that are "more serious" than the injuries that the victim was aware of before be "qualitatively different" injuries. Br. of Resp't/Cross-Appellant at 37, 41-42. The plaintiff in *Carollo* made the same argument, and Division Three addressed that argument as follows:

> While Mr. Carollo is correct that the Legislature sought to liberalize the statute of limitations in favor of victims of childhood abuse, it did impose limits. Adopting his interpretation of the statute would be a substantial expansion, if not an outright repeal, of those limits. The proper body to make such changes is the Legislature. Although legislative finding number five, concerning later discovery of harm, might be read to support the contention that new symptoms related to a prior PTSD diagnosis result in a new cause of action, a more reasonable reading of the finding is that the Legislature sought to give causes of action for *different* injuries discovered at different times rather than applying to more severe manifestations of a prior injury. In any event, legislative findings are not operative law and cannot be used in jury instructions. *In re Det. of R.W.*, 98 Wn. App. 140, 145, 988 P.2d 1034 (1999). A jury faced with the question of whether, prior to 2005, Carollo

connected his psychological difficulties with the abuse by Dahl could reach only one conclusion: he did. Thus, summary judgment was appropriately granted.

*Carollo*, 157 Wn. App. at 803.

Here, Ohnemus states in her declaration that she has "just started to realized and come to terms with the notion that I might never fully recover from my injuries." CP at 482. Her therapist states that since Ohnemus obtained the 2002 report on Quiles, Ohnemus "needed intensive treatment" because Ohnemus had been "unaware of the extent of her injuries." CP at 485. And, the psychologist Ohnemus's attorneys retained to examine Ohnemus determined that the "anti-psychotic psychotropic medication" Ohnemus began taking in 2013 indicated that she was receiving "more significant and long term medical care than previously received," and that it appeared "Ohnemus is only now aware of the full extent of her injuries." CP at 489.

None of these statements alleges or indicates that Ohnemus is suffering from an injury that is different from the injuries she has suffered for many years. Moreover, her medical records show that she has suffered from PTSD, bipolar disorder, depression, anxiety, flashbacks, and various other conditions since at least 2002, and that by October 2007 she had already "been on a variety of psychotropic medications." CP at 301; *see also* CP at 193-94 (2002), 267 (2003), 272-73 (2003), 205 (2006), 279 (2007), 286 (2007), 296 (2007), 300-01 (2007), 303-10 (2007-2008), 176-75 (2009-2010). Thus, the record does not support an inference that Ohnemus suffered an injury "qualitatively different from other harms connected to the abuse" from which she previously suffered. *Carollo*, 157 Wn. App. at 801. Accordingly, we affirm the summary judgment dismissal of Ohnemus's negligence claims under RCW 4.16.340.

b.    "Causal Connection" to a Previously Known Injury

RCW 4.16.340(1)(c) also applies when a victim discovers the causal link between the wrongful act and her injury. *Carollo*, 157 Wn. App. at 803; *Hollmann*, 89 Wn. App. at 325. When the victim discovers the causal link is a subjective determination.[14] *Korst v. McMahon*, 136 Wn. App. 202, 207-08, 148 P.3d 1081 (2006); *Hollmann*, 89 Wn. App. at 325; *Cloud ex rel. Cloud v. Summers*, 98 Wn. App. 724, 734, 991 P.2d 1169 (1999).

In *Hollmann*, 89 Wn. App. 323, Division Three of this court reversed the dismissal of the plaintiff's claim as time-barred. When he was a child, the plaintiff had been abused by an adult. *Id.* at 328. He had not repressed memories of the abuse, but did not realize how the abuse was related to his injuries until he was an adult. *Id.* The plaintiff had blamed himself for the abuse and perceived himself as a willing participant in the relationship he had with his adult abuser. *Id.* As an adult, the plaintiff had received counseling for PTSD, depression, and self-image problems, but his counselor testified that he did not understand the connection between his symptoms and the abuse. *Id.* It was not until the plaintiff entered therapy again years later that he realized that he had been victimized by his abuser and he understood that his injuries of PTSD and depression

---

[14] RCW 4.16.340(1)(b) begins to run when the victim "discovered or reasonably should have discovered that the injury or condition was caused by said act." However, RCW 4.16.340(1)(c) omits the phrase "or should have discovered." This omission is consistent with the legislature's finding of intent that the "victim of childhood sexual abuse may be unable to understand or make the connection between childhood sexual abuse and emotional harm or damage until many years after the abuse occurs." LAWS OF 1991, ch. 212, § 1. Thus, RCW 4.16.340(1)(c) does not impose the duty of discovery upon the plaintiff, like RCW 4.16.080 does. *Korst*, 136 Wn. App. at 207-08; *Hollmann*, 89 Wn. App. at 334.

were causally connected to the abuse. *Id.* at 329. Thus, Division Three held that the statute of limitations was tolled.

In *Korst*, 136 Wn. App. 202, the plaintiff sued her parents for damages caused by sexual abuse by her father. In 1995, the plaintiff wrote her father a letter acknowledging his mistreatment of her. *Id.* at 204. Seven years later, the plaintiff began counseling and learned that being abused by her father was probably the cause of her problems. *Id.* at 204-05. A clinical psychologist diagnosed her with PTSD due to her father's sexual abuse of her. *Id.* She filed suit and the trial court granted the defense's motion for directed verdict, reasoning that the letter she wrote to her father in 1995 showed that she must have connected her abuse with her injuries at that time. *Id.* at 205. This court reversed, stating, "The letter simply indicates that she resented her father for sexually abusing her, not that [the plaintiff] understood the effects of that abuse." *Id.* at 209.

Here, the record shows that in 2003 and in 2007, Ohnemus expressed resentment towards the State for its failure to remove her from the abuse. The record also shows that Ohnemus believed that the abuse continued "so much longer" because of the State's failure to act on the allegations. CP at 584. The record further shows that Ohnemus connected the abuse she was subjected to as a child to the injuries she currently suffers from more than three years prior to filing the current suit against the State. Thus, unlike the plaintiffs in *Hollmann* and in *Korst*, Ohnemus understood that her injuries were caused by the abuse she suffered. Ohnemus further understood that she suffered more abuse because the State did not remove her from Quiles's home. Therefore, we hold that Ohnemus had made "the causal connection between the defendant's act," in this case the State's alleged negligent investigation, "and the injuries for which the claim is brought."

No. 46944-8

*Hollmann*, 89 Wn. App. at 334.  Accordingly, we affirm the trial court's summary judgment dismissal of Ohnemus's claims for sexual and physical abuse as time-barred.

We reverse the superior court's denial of summary judgment dismissal of Ohnemus's claims under RCW 9.68A, and we affirm the superior court's summary judgment dismissal of Ohnemus's negligence claims.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Johanson, J.